SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

HERMIL, INC., d/b/a Wages
Bookkeeping Service,
Defendant–Appellant,

Herman N. Wages, Jr., Douglas B. Ko-
ger, John J. Leier, and Stewart Title
of Brevard, Inc., Defendants,

280 On 530 Trust, 300 On 530 Trust, 990
On 530 Trust, 1000 On 530 Trust, 4000
On 530 Trust, I–4 Fuller Trust, and
Treasure Island Trust, Claimants–Ap-
pellees.

No. 87–3117.

United States Court of Appeals,
Eleventh Circuit.

Feb. 29, 1988.

Elmo Hoffman, Parker, Johnson, Owen
& McGuire, Orlando, Fla., for defendant-ap-
pellant.

Daryl Bloodworth, Orlando, Fla., for
4000 on 530 Trust.

Hugh M. Palmer, Moreland, Palmer· &
Marlow, Winter Park, Fla., for 300 on 530
Trust, 280 on 530 Trust, 990 on 530 Trust
& I–4 Fuller Trust.

John S. Schoene, Orlando, Fla., for Treas-
ure Island Trust (SN 8/7).

Jack R. Leonard, Orlando, Fla., for 1000
on 530 Land Trust.

Before VANCE and HATCHETT,
Circuit Judges, OWENS *, Chief
District Judge.

VANCE, Circuit Judge:

The central issue in this appeal is wheth-
er there exists an ambiguity in the district
court's 1982 final judgment so that five
years later the court could restructure the
original order of relief among the parties
by "interpreting" the judgment. Because
we find no ambiguity in the language of
the original judgment, we hold that the
district court lacked authority to alter its
judgment. We therefore vacate the district
court's 1987 order attempting to do so, and
hold that the original 1982 decree should be
enforced.

* Honorable Wilbur D. Owens, Jr., Chief U.S. Dis-
trict Judge for the Middle District of Georgia,     sitting by designation.

## I.

This case has lingered in federal court for sixteen years. In 1971 the Securities and Exchange Commission filed suit alleging that the defendants[1] had engaged in the illegal sale of unregistered interests in real estate trusts. In 1980 the district court found that the defendants had violated section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934. In January 1982 the district court issued an order entitled "Final Judgment of Permanent Injunction and Other Relief." This order permanently enjoined the defendants from engaging in activities relating to the sale of the trust interests.

The district court also ordered the disgorgement of unjust profits by the defendants to the investors in the trusts. Several of the defendants, however, were owed money from the trusts for expenses incurred in connection with the management of the trusts. The district court therefore set out in the 1982 order the amounts of money due each party.[2] The court devised a system whereby the trustees of the trusts would pay to the defendants various sums of money as soon as the defendants had complied with the terms of the final judgment by paying off all the trusts.

The key provisions of the 1982 order, and the subject of the current appeal, are the paragraphs describing the order of payment and the conditions precedent to the receipt of payment by the parties. Paragraph XXVIII of the 1982 order provides that the various trusts "shall not pay any of the amounts ordered herein unless and until the respective defendants submit to the trusts an affidavit that said defendant has fully complied with the orders herein, including the payment of monies owed to any trusts...." Paragraph XXX of the 1982 order provides that "where a defendant is owed money by the trustee, the defendant having complied with all orders herein imposed, will receive cash if all properties in that trust have been sold and paid for...."

On May 14, 1985 HerMil, Inc. filed a notice of compliance and motion for enforcement. HerMil alleged that it had complied with all provisions of the 1982 order, and therefore was entitled to the money owed it by the various trusts.[3] At a July 30, 1985 hearing on the motion, counsel for several of the trusts argued for the first time that HerMil should not be allowed to "get anything out of these trusts" until HerMil's "co-conspirators" pay the money they owed to the trusts. The trusts argued that the 1982 order was unclear as to whether or not the defendants were to be treated separately under the decree.

The district court concluded that defendants HerMil, Inc. and Herman Wages should be treated together, so that Wages or his estate[4] would have to comply with the 1982 order before HerMil could collect the money owed to it.[5] On January 29, 1987 the district court entered a written order confirming that each trust was not

---

1. The defendants include HerMil, Inc., Herman Wages and several other codefendants not involved in the current aspect of the dispute. Mildred Wages, the sole stockholder and manager of HerMil, Inc., was not named in the SEC's complaint.

2. For example, in paragraphs XIV and XV the district court ordered defendant Herman Wages to pay $62,015.01 to the 4000 on 530 Trust, defendant John Leier to pay $75,981.26 to the 4000 on 530 Trust, and ordered the 4000 on 530 trust to pay HerMil, Inc. $22,471.60.

3. The 1982 order did not require HerMil to make any cash payments. The 1982 order only required HerMil to enable one of the trusts to obtain title to a certain parcel of property and to perform other administrative tasks. In re-

turn HerMil was entitled to receive a total of $65,924.35 from seven of the eight trusts.

4. Herman Wages died after the district court had issued the 1982 order.

5. The district court explained:

I think that it was intended that these Defendants essentially were to be treated individually. However, when you come to HerMil, Inc., I find it difficult to separate HerMil from Wages. I think that they are in the same boat. HerMil acted as Wages' agent in many instances.

I think that for Hermil to be able to get what was found to be owing to it, that Wages had got to, or someone on Wages' behalf has got to pay what he's supposed to have paid to comply with the Order.

required to pay HerMil until Wages paid the trusts. HerMil now appeals from that order.

## II.

HerMil argues on appeal that the district court impermissibly altered the 1982 final judgment because the court did not have authority to amend the judgment five years after the court had entered it. The trusts respond that the district court's actions in 1987 merely amounted to a clarification of ambiguous language in the 1982 order.

■ A district court has the power to issue an order requiring the parties to carry out the terms of an earlier order. *United States v. New York Tel. Co.,* 434 U.S. 159, 188, 98 S.Ct. 364, 380, 54 L.Ed.2d 376 (1977) (Stevens, J., dissenting in part); *see Gates v. Collier,* 616 F.2d 1268, 1271 (5th Cir.1980); *see also Gagnon v. United States,* 193 U.S. 451, 456, 24 S.Ct. 510, 511, 48 L.Ed.2d 745 (1904) (power to amend records is an inherent power of courts). Included in a district court's power to administer its decrees is the power to construe and interpret the language of the original order. *See South Delta Water Agency v. United States,* 767 F.2d 531, 541 (9th Cir.1985); *United States v. Hennen,* 300 F.Supp. 256, 263 (D.Nev.1968); *cf. Kolasz v. Levitt,* 63 A.D.2d 777, 404 N.Y.S.2d 914, 916 (1978) (clarification of judgment to provide clearer direction to the parties is not a material or substantive change). The usual method for having the court interpret its judgment is to file a motion to enforce the judgment. *See Jones v. Cleland,* 515 F.Supp. 212, 213 & n. 1 (N.D.Ala.1981).[6]

The trusts argue that paragraphs XXVIII and XXX of the 1982 judgment create an ambiguity, thus giving the court authority to clarify this ambiguity in 1987 through interpretation of these paragraphs. The

issue, therefore, is whether there is an ambiguity in the paragraphs cited by the trusts.

An ambiguous text has more than one meaning. Syntactical ambiguities arise when the structure of a sentence leaves room for more than one interpretation, although the linguistic context of the sentence may eliminate the ambiguity. *See* Moore, *The Semantics of Judging,* 54 S.Cal.L.Rev. 151, 181–185 (1981). The role of the courts is often to choose from among several meanings of an ambiguous text. *See* Chemerinsky, *The Price of Asking the Wrong Question: An Essay on Constitutional Scholarship and Judicial Review,* 62 Tex.L.Rev. 1207, 1239–40 (1984).

■ Paragraph XXX of the 1982 order provides that whether a defendant who is owed money will receive cash or property depends on whether the trust in question has sold enough property to raise sufficient cash. That paragraph provides: "where *a defendant* is owed money by the trustee, *the defendant* having complied with all orders herein imposed, will receive cash...." (emphasis added). This provision clearly treats each defendant individually.

Paragraph XXVIII provides that a defendant will not receive any money until the defendant has paid the trusts. That paragraph provides that the eight trusts "shall not pay any of the amounts ordered herein unless and until the *respective* defendants" have fully complied with the order. (emphasis added). The trusts argue that this provision treats the defendants collectively, not individually, thus creating an ambiguity in conjunction with paragraph XXX.[7]

The flaw in this argument is that the trusts place too much emphasis on the "s" at the end of "defendants," and pay too

---

6. The case did come before the district court in 1985 on HerMil's motion to enforce the 1982 order. It is the trusts, however, which claim the ambiguity.

7. Under this reading of the 1982 order a defendant who has complied with the order and is owed money from the trusts can not receive anything until *all* defendants have complied with the order. Herman Wages died without

fully complying with the order, and the trusts now seek to force HerMil to pay what Wages owed under the decree. At oral argument counsel for the trusts conceded that under their interpretation of the order, they are not required to pay HerMil until all defendants have complied with the order by paying back the trusts.

little attention to the word "respective." We believe that the use of the phrase "respective defendants" makes it clear that paragraph XXVIII, like paragraph XXX, treats each defendant individually. Both paragraphs provide that once a particular defendant has complied with the terms of the 1982 order, that defendant is entitled to the money owed him by the trusts, regardless of the degree of compliance by the other defendants. There is thus no ambiguity in the 1982 final judgment, and therefore no basis for saying that in 1987 the district court was merely interpreting its original order.

The trusts point to a substantial and convincing amount of evidence that HerMil acted as Wages' agent, and argue that the district court reached an equitable result in 1987 by ruling that the two defendants should be treated as one for purposes of entitlement to funds under the 1982 decree. The district court even stated in July 1985 that it had intended this result all along. The court, however, did not draft the 1982 order to reflect this intent, and the 1987 revision came too late.[8] *Cf. Swope v. General Motors Corp.*, 445 F.Supp. 1222, 1230–31 (W.D.Mo.1978) (Missouri rules "do not provide for amendment of a judgment to include a recitation of the judge's prior intentions and to modify the form of the judgment to conform to the newly stated intention"). We do not dispute that the 1987 order may result in a more equitable resolution of the case. We hold, however, that the 1982 decree does not treat HerMil and Wages as one entity, and that the

district court had no authority to order in 1987 that they be treated as one entity.

## III.

The district court's order of January 29, 1987 is therefore VACATED, and the case is REMANDED with directions that the district court enforce the January 1982 final judgment.[9]

HATCHETT, Circuit Judge, dissenting:

The majority is correct in holding that a judge may not amend or alter a judgment five years after its entry; but that is not what happened in this case. This district judge was the sole judge involved in handling this case and was the fact-finder in this extended litigation; he was uniquely qualified to *clarify* the court's intent. Indeed, this judge stated in July, 1985, that the court intended Hermil and Wages to be treated as one, requiring a joint set-off of their debts for purposes of entitlement to funds. Clarification of a judgment is permissible. The majority has become entangled in a semantical exercise.

---

**8.** None of the trusts has ever raised a Rule 59(e) motion to amend the 1982 judgment, or a Rule 60(b) motion to relieve the trusts from the 1982 judgment. Instead the trusts have argued consistently that the authority for the district court's order in 1987 was the alleged ambiguity found penumbrally in paragraphs XXVIII and XXX. This tactic shows that the trusts recognize that the time allowed for proceeding under Rules 59(e) and 60(b) has long since expired. *See Browder v. Director, Dept. of Corrections of Ill.*, 434 U.S. 257, 264–65, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978); *Tucker v. Commonwealth Land Title Ins. Co.*, 800 F.2d 1054, 1056 (11th Cir.1986); *Glass v. Seaboard Coast Line R.R. Co.*, 714 F.2d 1107, 1109 (11th Cir.1983); *Fackel-*

*man v. Bell,* 564 F.2d 734 (5th Cir.1977); *Chavez v. Balesh,* 704 F.2d 774, 777 (5th Cir.1983).

**9.** There is a factual dispute over whether HerMil has complied fully with the 1982 order. HerMil alleges that it has, but the trusts have disputed this both in the district court at the July 30, 1985 hearing and at oral argument before this court. The trusts claim for example, that HerMil has never filed certain affidavits required by the 1982 order. The district court apparently never ruled on this issue in 1987 when it altered the 1982 order. Because we vacate the 1987 order and direct the district court to enforce the original order, we leave it for the district court to resolve the issue of compliance with the 1982 order.