**HEARTLAND HOSPITAL, Plaintiff,**

v.

**Tommy G. THOMPSON, Secretary of Health and Human Services, Defendant.**

Civil Action No. 95–0951 (RMU).

United States District Court, District of Columbia.

Aug. 3, 2004.

*Heartland Hospital v. Shalala,* No. 95–951, slip op. (D.D.C. Jun. 15, 1998) ("*Heartland I*") addressed challenges that the plaintiff ("Heartland") brought against the Department of Health and Human Services ("HHS") for its adoption of a regulation preventing Heartland from receiving Medicare reimbursements. The court held that the regulation was invalid and remanded the action to HHS for action consistent with the court's opinion. Claiming that HHS' subsequent action has been inconsistent with the court's judgment, the plaintiff now seeks Medicare reimbursements and interest payments. The defendant, styling its opposition to Heartland's motion to enforce judgment as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), maintains that the plaintiff is misinterpreting *Heartland I* and that HHS is under no obligation to reimburse or provide interest payments to the plaintiff. For the reasons stated below, the court denies the plaintiff's motion to enforce the judgment.

Christopher L. Crosswhite, Duane Morris, LLP, Michael F. Ruggio, Washington, DC, for Plaintiff.

Charlotte A. Abel, Washington, DC, Lawrence J. Harder, Department of Health and Human Services, Baltimore, MD, for Defendant.

*MEMORANDUM OPINION*

URBINA, District Judge.

**DENYING THE PLAINTIFF'S MOTION TO ENFORCE JUDGMENT**

**I. INTRODUCTION**

This matter comes before the court upon the plaintiff's motion to enforce the court's judgment of June 15, 1998 ("the judgment"). Issued by the late Judge Harold L. Greene, the judgment in question,

**II. BACKGROUND**

**A. Factual History**

Medicare reimburses certain hospitals for medical care provided to eligible elderly and disabled persons. 42 U.S.C. §§ 1395 *et seq.* Medicare places certain cost limits on participating hospitals, but a "sole community hospital" ("SCH") is exempt from such limits. *Heartland I* at 3. To qualify for SCH status, a hospital must meet requirements promulgated by the Secretary of HHS. *Id.* During all times relevant to this case, a hospital could receive SCH status if it was located in a rural area and met other criteria. *Id.* at 7. A hospital in an urban area could qualify as an SCH if it was more than 35 miles away from the nearest like hospital. *Id.* at 5. The Secretary defined "urban" as any area located within a "Metropolitan Statis-

**10**

tical Area" ("MSA"), as determined by the Office of Management and Budget.[1]  *Id.* at 5–6. "Rural" meant any area not within an MSA. *Id.*

At the time of the judgment, the plaintiff was a hospital located in an urban area and less than 35 miles from the nearest like hospital.  *Id.* at 2.  Therefore, the Health Care Financing Administration ("HCFA")—an agency within HHS—denied the plaintiff SCH status in 1993.  *Id.* at 1–2.  The plaintiff subsequently appealed the denial of SCH status to the Provider Reimbursement Review Board ("the Board").  *Id.* at 2. After the Board determined that it lacked jurisdiction, it granted the plaintiff's request for expedited judicial review of its denial of SCH status.  *Id.*

### B.  Procedural History

In 1995, the plaintiff filed suit in this court seeking reimbursement based on SCH status from 1992, plus interest.  Pl.'s Mot. to Enforce J. ("Pl.'s Mot.") at 1–2. The plaintiff then moved for summary judgment, alleging that the rural requirement was arbitrary and capricious and, therefore, invalid under the Administrative Procedure Act ("APA").  Specifically, the plaintiff claimed that (1) the rural requirement was manifestly contrary to the Medicare statute;  (2) the Secretary failed to provide an adequate basis or reasoned analysis for the regulation;  and (3) the Secretary failed to consider reasonable alternatives when adopting the MSA as the relevant measure of an urban area. *Heartland I* at 2.

In a 1998 opinion, Judge Greene rejected the first two arguments, holding (1) that the regulation was "well within the realm of permissible interpretations of" the Medicare statute and (2) that "the Secretary established, and has maintained,

a rational basis for the rural location requirement."  *Id.* at 15, 19.

On the third argument, however, the court held for the plaintiff, stating that "[t]he failure of the Secretary to respond to the reasonable alternative[s] suggested during the comment period renders the adoption of the regulations arbitrary and capricious and, consequently, invalid."  *Id.* at 23–24.  In reaching this conclusion, the court noted that the Secretary had "at least three alternatives to MSAs as a method of identifying an urban area."  *Id.* at 20.  The principal alternative was the elimination of the rural requirement altogether.  *Id.* at 21.  The court also indicated that the determination of the urban/rural distinction could be made (1) by using the Census Bureau definition of "urbanized areas" and (2) by using health facility planning areas.  *Id.* at 20.  While HHS had "considered and rejected the principal alternative," the court held that "[r]esponding to only one alternative . . . is not enough to satisfy the APA." *Id.* at 21.  Instead, the defendant "should have responded to [the other alternatives] and explained why they were not adopted." *Id.* at 22.  Judge Greene granted the plaintiff's motion for summary judgment and remanded to HHS for "action consistent with the foregoing opinion."  Order of Jun. 10, 1998.

Upon remand, HHS issued "a final rule specifically explaining its adoption of an MSA-based definition of urban areas and rejecting the use of either Census Bureau urbanized areas or health facility planning areas for that purpose."  Def.'s Opp'n at 5. HCFA interpreted Judge Greene's judgment to mean that the rural requirement was not vacated and that explanation of the MSA-based definition's superiority to

---

1.  At the time, a MSA was "either a city with a population of at least 50,000 or a[n] . . . urbanized area of at least 50,000 and a total metropolitan area population of at least 100,-000."  45 Fed.Reg. 956, 956 (Jan. 3, 1980).

its alternatives was sufficient to satisfy the judgment. *Id.* Consequently, HCFA issued its final decision on the Heartland matter in September 2000, again applying the rural requirement based on the MSA based definition of urban areas, and again denying Heartland SCH status. *Id.* at 5–6.

After the case was reassigned to this judge, the plaintiff moved to enforce the judgment in November 2000, again seeking Medicare reimbursement consistent with SCH status starting in 1992. Pl.'s Mot. at 1–2. The defendant claims that the plaintiff's motion to enforce judgment is essentially "a request for judicial review of the Secretary's decision on remand," and responds with a motion to dismiss. Def.'s Opp'n at 15. After the plaintiff and defendant filed their motions, the court granted the parties' request to stay the case pending settlement negotiations. The parties, however, were unable to resolve the matter.

The plaintiff has filed a separate action seeking judicial review of HHS' September 2000 decision on remand. *Heartland Hosp. v. Thompson,* No. 00–2802 (D.D.C. November 20, 2000). This Court's order stayed the plaintiff's action seeking judicial review until disposition of the motion currently under consideration. Order dated April 18, 2001. Accordingly, the court will not presently engage in judicial review of the Secretary's decision on remand. The court will consider only the plaintiff's Motion to Enforce Judgment.

### III. ANALYSIS

#### A. Legal Standard for Motion to Enforce Judgment

■ A motion to enforce judgment is the usual method for requesting a court to interpret its own judgment. *Sec. & Exch. Comm'n v. Hermil, Inc.,* 838 F.2d 1151, 1153 (11th Cir.1988). "Such a motion should be utilized to compel compliance with a prior decision, especially in cases of willful or deliberate violation of a court order." *Natural Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.,* 20 F.Supp.2d 700, 707 (D.Del.1998); *Gregris v. Edberg,* 645 F.Supp. 1153, 1156 (W.D.Pa.1986), *aff'd,* 826 F.2d 1054 (3d Cir.1987).

■ Courts grant motions to enforce judgments when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment. *E.g., Pub. Citizen, Inc. v. Dep't. of Educ.,* 292 F.Supp.2d 1 (D.D.C.2003) (granting a motion to enforce judgment ordering the Department of Energy's compliance with the plaintiff's Freedom of Information Act request when the Department could not demonstrate that its search for information was adequate to satisfy the judgment); *Cent. of Ga. R.R. Co. v. United States,* 410 F.Supp. 354 (D.D.C.1976) (granting a motion to enforce judgment against the Interstate Commerce Commission when the Commission's misinterpretation of the prior judgment caused it to reopen barred administrative proceedings).

■ If the plaintiff has received all relief required by that prior judgment, the motion to enforce is denied. *See, e.g., Watkins v. Washington,* 511 F.2d 404, 406 (D.C.Cir.1975). In cases of judicial review of administrative agency decisions where the case is remanded to the agency for explanation of its challenged rule, the court will deny a motion to enforce judgment against the agency if the agency adequately explains its reasons for adopting the rule. *E.g., Int'l Union v. Occupational Safety & Health Admin.,* 37 F.3d 665 (D.C.Cir.1994) (denying a motion to enforce judgment where the Occupational Safety & Health Administration adequately explained its reasons for adopting a challenged regulation). Within a court's

power to administer its decrees is the power to construe and interpret the language of the judgment. *Hermil,* 838 F.2d at 1153.

## B. The Court Denies the Plaintiff's Motion Because the Defendant Has Complied With the Judgment

In the instant case, the parties disagree as to what is required of the Secretary to comply with the judgment in *Heartland I.* While the plaintiff contends that the judgment entitles it to reimbursement and interest, the defendant argues that the judgment merely remands the case to the Secretary to better articulate the "rationale for using MSAs, as opposed to the alternatives that had been proposed by public commenters, to differentiate between urban and rural areas." Pl.'s Mot. at 16–17; Def.'s Opp'n at 3. The order, however, merely grants judgment for the plaintiff and remands to HHS for "action consistent with the foregoing opinion." Order dated June 15, 1998.

The plaintiff alleges that the judgment controls rather than the opinion. Pl.'s Reply at 2. In contrast to the ambiguity of the order in the instant case, however, the cases cited by the plaintiff involve a direct conflict of a clearly-written order with an opinion or with a clerk's docket entry. *E.g., Eakin v. Cont'l Ill. Nat'l Bank & Trust Co.,* 875 F.2d 114, 118 (7th Cir.1989) (direct conflict between opinion and order); *O'Brien v. Harrington,* 233 F.2d 17, 20 (D.C.Cir.1956) (direct conflict between order and clerk's docket entry); *United States v. Hark,* 320 U.S. 531, 534, 64 S.Ct. 359, 88 L.Ed. 290 (1944) (direct conflict between opinion and order). Another case cited by the plaintiff merely holds that the holding of the prior judgment, rather than dicta in the opinion, controls. *State of Oklahoma v. State of Texas,* 272 U.S. 21, 42–43, 47 S.Ct. 9, 71 L.Ed. 145 (1926). In the instant case, the order is ambiguous; it does not directly contradict the opinion.

Further, Judge Greene's reasoning for finding the rural requirement arbitrary and capricious is not merely dicta, it is the meat of the opinion.

Finally, the plaintiff argues that *Great Northern Railway Co. v. General Railway Signal Co.* also supports the proposition that the judgment controls rather than the opinion. Pl.'s Reply at 2 (citing *Great Northern Railway Co. v. General Railway Signal Co.,* 57 F.2d 457 (8th Cir. 1932)). But *Great Northern* supports the exact opposite conclusion. *Great Northern* deals with the authority of a trial court to interpret an appellate opinion in applying its mandate on remand. *Id.* at 458. The Eighth Circuit held that an appellate opinion is part of its mandate and "should be consulted [by the trial court] to ascertain what was intended by the mandate." *Id.* at 459. The case before this court presents a similar situation—here the court attempts to interpret the judgment of another district judge. Thus, *Great Northern* suggests that the court should consult Judge Greene's opinion to interpret his judgment. *Id.* Because the parties present conflicting interpretations of the judgment and the judgment itself is ambiguous, the court concludes that it must interpret the opinion accompanying the judgment to resolve the ambiguity. *Hermil,* 838 F.2d at 1153.

### 1. Awarding Reimbursement and Interest Would Contradict the Reasoning and Holding of the Opinion

The plaintiff insists that the court "could not have made it more clear that it was invalidating the rural location requirement in total," not only the "use of MSAs in making the urban rural distinction." Pl.'s Reply at 7. The plaintiff misstates Judge Greene's holding. One needs to look at the reason why Judge Greene invalidated the Secretary's rural location requirement to understand the nature of that invalida-

tion. As stated in the opinion, "the regulation is invalid because the Secretary failed to consider or respond to reasonable alternatives to the use of [MSAs] as the relevant measure of an urban area." *Heartland I* at 24. The court found nothing wrong with the regulation itself. In fact, the court found that the regulation was both consistent with the governing statute and had a rational basis. *Id.* at 15, 19. Rather, it stated that HHS' failure to consider alternatives "render[ed] the *adoption* of the regulations arbitrary and capricious." *Id.* at 23–24 (emphasis added).

■ The Secretary's failure to consider alternatives does not automatically entitle the plaintiff to reimbursement and interest. A procedural flaw in the adoption of a rule does not automatically make the opposite of that rule the proper outcome. Often courts will remand to the agency for reconsideration without technically vacating the regulation when the challenged rule fails for lack of reasoned decision-making. *E.g., Engine Mfrs. Assoc. v. Envtl. Prot. Agency,* 20 F.3d 1177, 1184 (D.C.Cir.1994); *Mass. v. U.S. Nuclear Regulatory Comm'n,* 924 F.2d 311, 336 (D.C.Cir.1991); *United Mine Workers of America v. Mine Safety & Health Admin.,* 920 F.2d 960, 966–67 (D.C.Cir.1990).

The plaintiff argues that in the each of the aforementioned cases where a court remanded for reconsideration without vacating, "the court expressly stated that it was *not vacating* the agency action." Pl.'s Reply at 10 (emphasis in original). Be that as it may, that argument is irrelevant to the issue of whether it is appropriate to remand for reconsideration in this case. Indeed, the plaintiff itself cites "lack of reasoned decision-making" due to inadequate consideration or unclear analysis of relevant issues as a reason to remand for reconsideration without vacating the rule. *Id.* at 11. The argument that Judge Greene did not explicitly remand for elabo-

ration of the agency's reasoning is unpersuasive. *Id.* at 11–12. Nor did he explicitly remand for automatic grant of SCH status, reimbursement and interest. Order of June 10, 1998.

■ Nothing in *Heartland I* foreclosed the possibility that the rural requirement might eventually pass scrutiny; after properly considering alternatives to MSAs to determine SCH status, HHS was still permitted to utilize MSAs. *E.g., International Union,* 37 F.3d at 667 (denying the plaintiffs' motion to enforce judgment when, after remand, the agency explained its reasons for re-adopting the challenged regulation). Consideration of the alternatives was the decisive factor in *Heartland I,* and the Secretary's lack of consideration, not a fundamental flaw in the rural requirement itself, ultimately caused the court to invalidate the rural requirement. *Heartland I* at 24. The Court will not grant the plaintiff SCH status, reimbursement and interest purely on the grounds that there was a procedural flaw in adoption of the rural requirement.

## 2. The Relief that The Plaintiff Seeks Is Inappropriate

Finally, an award to the plaintiff of its requested relief—SCH status and reimbursement plus interest—would be inappropriate under an uncontroverted line of binding cases. *See, e.g., Fed. Power Comm'n v. Idaho Power Co.,* 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15 (1952); *Nat'l Labor Relations Bd. v. Food Store Employees Union, Local 347,* 417 U.S. 1, 9, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1974); *Parkview Med. Assocs. v. Shalala,* No. 94–1941(RMU), 1997 WL 470107 (D.D.C. Aug. 13, 1997).

■ *Idaho Power* and its progeny suggest that a judicial court should not substitute its judgment for that of an administrative agency on matters of administrative policy, even when it finds le-

gal errors with agency actions. *Idaho Power*, 344 U.S. at 20, 73 S.Ct. 85. Rather, "the guiding principle ... is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration." *Id.* The "guiding principle of administrative law, long recognized by [the Supreme] Court, is that 'an administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge.'" *Food Store Employees*, 417 U.S. at 9, 94 S.Ct. 2074 (quoting *Federal Communications Comm'n v. Pottsville Broad. Co.*, 309 U.S. 134, 145, 60 S.Ct. 437, 84 L.Ed. 656 (1940)).

In *Idaho Power*, the Supreme Court struck down a district court's order modifying a license granted by the Commission to the plaintiff power company. *Idaho Power*, 344 U.S. at 20, 73 S.Ct. 85. The Court warned district courts reviewing agency action that they do not have the "power to exercise an essentially administrative function." *Id.* at 21, 73 S.Ct. 85. Here, the plaintiff wishes this Court to interpret Judge Greene's opinion as having made an essentially administrative decision—to grant Heartland SCH status. 42 U.S.C. § 1395ww(d)(5)(D)(iii)(I).

The plaintiff attempts to distinguish its case from the *Idaho Power* line by noting that the right to judicial review in its case is based on the Administrative Procedure Act (APA), rather than the Federal Power Act (FPA), as in *Idaho Power*. Pl.'s Reply at 4. Citing no caselaw, the plaintiff asserts that the APA provides courts with greater discretion to take and order remedial ac-

tion. *Id.* But the language of the FPA allowed reviewing courts "to affirm, *modify*, or set aside" an order of the FPC. *Idaho Power*, 344 U.S. at 21, 73 S.Ct. 85 (emphasis added). Yet the Supreme Court decided it was nonetheless inappropriate for the reviewing court to modify the FPC's order. *Id.* at 20, 73 S.Ct. 85.

Like in *Idaho Power*, the Supreme Court in *Food Store Employees* struck down a court order modifying an agency action even though the controlling statute allowed great judicial discretion. 417 U.S. at 3, 94 S.Ct. 2074. The National Labor Relations Act granted authority to courts to "make and enter a decree ... modifying, and enforcing as so modified" NLRB action. *Id.* But the Supreme Court refused to allow the reviewing court to enlarge a remedy set by the NLRB, citing "the integrity of the administrative process" and the "discretionary judgment which Congress has entrusted to [the NLRB]." *Id.* at 8–9, 94 S.Ct. 2074.

The language of the APA, on the other hand, allows courts only to "hold unlawful and set aside" illegal agency action. 5 U.S.C. § 706(2). The plain language of the APA seems to afford less discretion to reviewing courts to make administrative decisions than the FPA. Moreover, the Court in a case involving APA-based judicial review of an administrative action stated that "if the agency has not considered all relevant factors ... the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). The judicial practice of deferring to agency discretion theoretically should be universal and applied not only to certain agency actions under certain statutes.[2] *Bridge v. U.S.*

---

**2.** The plaintiff's assertion that *Idaho Power* is limited to its facts by *Chapman v. El Paso Natural Gas Co.* is misplaced. *Chapman v. El*

*Paso Natural Gas Co.*, 204 F.2d 46 (D.C.Cir. 1953). *Chapman* merely presents an exception to Idaho Power's "guiding principle": when

*Parole Comm'n,* 981 F.2d 97, 105 (3d Cir. 1992) (stating that "[t]he Supreme Court's decisions in *Food Store Employees* and *Idaho Power* are equally applicable to all administrative agencies").

■ When a reviewing court concludes that an agency invested with broad discretion has apparently abused that discretion, remand to the agency for reconsideration is ordinarily the reviewing court's proper course. *Food Store Employees,* 417 U.S. at 10, 94 S.Ct. 2074. Such a solution "best respects the congressional scheme investing the [agency] with broad powers" to shape policy and "affords the [agency] the opportunity . . . to reframe and better effectuate that policy." *Id.*

Accordingly, the Court rules that Judge Greene did not intend to grant the plaintiff SCH status, reimbursement and interest. Upon remand, the defendant has reconsidered the alternatives to the MSA and has concluded that they are inferior. This conclusion is all that was required by the prior judgment. Thus, the court denies the plaintiff's motion to enforce judgment. *Watkins,* 511 F.2d at 406.

## IV. CONCLUSION

For the foregoing reasons, the Court denies the plaintiff's motion to enforce judgment. An order directing the parties in a manner consistent with the Memorandum Opinion is separately and contemporaneously issued this 3rd day of August, 2004.

the court's decision leaves no discretion for the agency, the order may issue directly from the court because remand for reconsideration would be a mere formality. *See generally id.*