# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 16, 2005           Decided July 13, 2005

No. 04-5366

HEARTLAND REGIONAL MEDICAL CENTER, *F/K/A* HEARTLAND HOSPITAL,
APPELLANT

v.

MICHAEL O. LEAVITT, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF HEALTH AND HUMAN SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 95cv00951)

———

    *Donald B. Verrilli, Jr.* argued the cause for appellant. With him on the briefs were *Michael B. DeSanctis*, *Elizabeth G. Porter*, *Christopher L. Crosswhite,* and *David H. Robbins*. *Michael F. Ruggio* entered an appearance.

    *Christine N. Kohl*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Barbara C. Biddle*, Assistant Director.

Before: SENTELLE, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Heartland Hospital appeals from the district court's denial of its motion to enforce a judgment that it obtained in 1998.  The district court rested its decision on the ground that the judgment did not require the remedy Heartland seeks -- a direction that it is entitled to "sole community hospital" status under the Medicare statute and to reimbursement in accordance with such status.  We agree with the district court and affirm the denial of the hospital's motion.

I

The federal Medicare program reimburses hospitals for the cost of medical care for older persons and other eligible individuals.  Medicare operates according to a prospective payment system (PPS), under which hospitals are paid a fixed rate based on a patient's diagnosis. 42 U.S.C. § 1395ww(d).  A hospital is exempt from PPS -- and therefore eligible for higher payments based on its historic costs -- if it qualifies as a "sole community hospital" (SCH).  *Id.* § 1395ww(d)(5)(D)(i).  At the relevant time, the Medicare statute defined an SCH as any hospital:

> (I) that [the Department of Health and Human Services (HHS)] determines is located more than 35 road miles from another hospital, [or]

> (II) that, by reason of factors such as the time required for an individual to travel to the nearest alternative source of appropriate inpatient care . . . , location, weather conditions, travel conditions, or absence of other like hospitals . . . , is the sole source of inpatient hospital services reasonably available to individuals in a geographic area.

42 U.S.C. § 1395ww(d)(5)(D)(iii) (1992).[1]

The Medicare statute directed HHS to "promulgate a standard for determining whether a hospital meets the criteria for classification as a sole community hospital under" clause (II) of the above definition. *Id.* § 1395ww(d)(5)(D)(iv). Under the regulations promulgated pursuant to that direction, and in effect during the relevant period, a hospital qualified as an SCH under clause (II) only if it was "located in a rural area" and met other listed criteria. 42 C.F.R. § 412.92(a) (1992). Thus, under the regulations, a hospital located fewer than 35 miles from another hospital -- and thus ineligible under clause (I) -- could not obtain SCH status unless it was located in a rural area. *Id.*[2] HHS

---

[1]A hospital also qualified as an SCH if it was "designated by [HHS] as an essential access community hospital." 42 U.S.C. § 1395ww(d)(5)(D)(iii)(III) (1992). That provision is not at issue in this case.

[2]In 1999, Congress amended the Medicare statute to provide that an urban hospital that "would [otherwise] qualify . . . as a sole community hospital" shall be treated as "being located in [a] rural area" for purposes of determining SCH status. 42 U.S.C. § 1395ww(d)(8)(E). Based on the new provision, Heartland received SCH status as of January 1, 2000. This appeal therefore concerns Heartland's status only from 1992 through 1999.

justified this "rural location requirement" on the ground that "urban areas generally have better roads, faster snow-clearing, and the choice of more available hospitals." Medicare Geographic Classification Review Board, Procedures and Criteria, Final Rule, 56 Fed. Reg. 25,458, 25,483 (June 4, 1991). For purposes of SCH eligibility, a "rural area" was defined as "any area outside an urban area," and an "urban area" was defined as a "Metropolitan Statistical Area (MSA) . . . as defined by the Executive Office of Management and Budget." 42 C.F.R. § 412.62(f)(ii), (iii) (1992).[3]

Heartland Hospital, located in the city of St. Joseph, Missouri, is an acute-care facility situated fewer than 35 miles from other hospitals. In May 1992, Heartland submitted an application for SCH status to its Medicare fiscal intermediary, Mutual of Omaha, in accordance with HHS regulations.[4] The intermediary recommended that the Health Care Financing

---

[3]At the time, an MSA was defined as "either a city with a population of at least 50,000, or a Bureau of the Census urbanized area of at least 50,000 and a total metropolitan statistical area population of at least 100,000." Notice of Final Standards for Establishing Metropolitan Statistical Areas Following the 1980 Census, 45 Fed. Reg. 956, 956 (Dep't of Commerce Jan. 3, 1980).

[4]To obtain SCH status, a hospital must first apply to its Medicare fiscal intermediary. 42 C.F.R. § 412.92(b)(1)(i). The intermediary then forwards the application and its recommendation to the appropriate regional office of the Health Care Financing Administration (HCFA), *see infra* note 5, which decides whether to grant the application. *Id.* § 412.92(b)(1)(iv), (v). The hospital may appeal HCFA's decision to the Provider Reimbursement Review Board, 42 U.S.C. § 1395*oo*(a), and ultimately to a federal district court, *id.* § 1395*oo*(f).

Administration (HCFA),[5] an HHS component, deny the application based on Heartland's location. HCFA did so on the ground that, because Heartland was "located in an urban area and the closest like hospital [was] fewer than 35 miles away," it was ineligible under the rural location requirement. Letter from Edward M. Brennan, HHS, to Richard G. Bath, Mutual of Omaha (Jan. 22, 1993).

Heartland appealed HCFA's decision to HHS's Provider Reimbursement Review Board (PRRB), seeking expedited judicial review of the denial of SCH status pursuant to 42 U.S.C. § 1395*oo*(f)(1). Under that provision, a hospital is entitled to expedited judicial review of any determination that "involves a question of law or regulations relevant to the matters in controversy" that the Board "is without authority to decide." 42 U.S.C. § 1395*oo*(f)(1). Because Heartland's appeal challenged the validity of the regulatory requirement that a hospital situated within 35 miles of another hospital be located in a rural area, and thereby raised "a question of law or regulations" that the PRRB lacked authority to decide, the PRRB granted Heartland's request. Letter from Irvin Kues, HHS, to Christopher L. Crosswhite, Vinson & Elkins (Mar. 29, 1995).

Heartland then filed suit in the United States District Court for the District of Columbia, challenging the validity of the rural location requirement on a number of grounds. The case was

---

[5]In 2002, HHS changed HCFA's name to the "Centers for Medicare & Medicaid Services." *See* Centers for Medicare and Medicaid Services, Statement of Organization, Functions and Delegations of Authority, Reorganization Order, 66 Fed. Reg. 35,437 (July 5, 2001). We use "HCFA" throughout this opinion for consistency with the prior proceedings.

assigned to the late Judge Harold Greene, who held that the requirement was consistent with the Medicare statute and that HHS had established a rational basis for adopting it. *Heartland Hospital v. Shalala* (*Heartland I*), No. 95-951, slip op. at 15, 19 (D.D.C. June 15, 1998). But the court also found that HHS had failed to consider reasonable alternatives proposed by commenters when it chose an MSA-based definition of "urban area."[6] "The failure of the Secretary to respond to reasonable alternative[s]" to MSAs "as the relevant measure of an urban area," the court held, "renders the adoption of the regulations arbitrary and capricious and, consequently, invalid." *Id.* at 23-24. The order accompanying the district court's 1998 opinion granted Heartland's motion for summary judgment and remanded the case to HHS "for action consistent with the foregoing opinion." *Heartland I*, order at 1 (June 15, 1998).

Following the district court's decision, things did not go as Heartland had hoped. In 1999, HHS conducted a rulemaking regarding a number of Medicare reimbursement issues. In the course of that rulemaking, the agency considered -- and rejected -- the alternative definitions of "urban area" noted in *Heartland I*. The agency explained why it believed that the MSA-based definition was the better one, and announced that it would continue to use that definition. *See* Changes to the Hospital

---

[6]Judge Greene noted two alternatives to MSAs that had been suggested in comments during the 1983 rulemaking: "urbanized areas," as the term is used by the Census Bureau; and "health facility planning areas," as described in the National Health Planning and Resources Development Act of 1974, Pub. L. No. 93-641, § 3, 88 Stat. 2225, 2229 (1975).

Inpatient Prospective Payment Systems and Fiscal Year 2000 Rates, Final Rule, 64 Fed. Reg. 41,490, 41,513-15 (July 30, 1999); Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2000 Rates, Proposed Rule, 64 Fed. Reg. 24,716, 24,732 (May 7, 1999).

In 2000, HCFA took up the remand from *Heartland I*. Once again, the agency concluded that Heartland did not qualify for SCH status, giving three reasons. First, HCFA determined that *Heartland I* did not vacate the SCH regulation, but merely remanded the case to HHS to further explain its definition of "urban area." Decision of the Administrator, *Heartland Hosp. v. Blue Cross & Blue Shield Ass'n*, PRRB Case No. 93-0648E, at 21 (Sept. 6, 2000). Finding that, in the 1999 rulemaking, HHS had "articulated a reasonable basis for the use of an MSA-based definition of rural, as opposed to other alternatives," HCFA concluded that "the MSA-based rural criteri[on] is properly applied in adjudicating this case." *Id.* at 27. And because Heartland was "located in an urban area and [was] within 35 miles of other like hospitals," HCFA determined that it did "not meet the applicable criteria for designation as a sole community hospital." *Id.*

Second, HCFA found that, even if the court's order did vacate the regulation, the district court "did not order the payment of money to [Heartland] based on designation as a sole community hospital," and "did not comment on whether [Heartland] should be designated as a sole community hospital." *Id.* At most, HCFA said, "the Court's action affected that part of the regulation which defines 'rural' within the context of MSAs," but "did not invalidate the rural requirement itself." *Id.* at 28. Concluding that "the establishment of a definition of rural, through adjudication, would not constitute retroactive

rulemaking," *id.*, HCFA determined that "the adoption of a MSA-based rural definition is appropriate and reasonable for the reasons" articulated in the 1999 rulemaking. *Id.* at 29.

Finally, HCFA reasoned that, even if the rural requirement were deleted from the regulation altogether, Heartland still would not qualify for SCH status because it had failed to demonstrate that it met the other regulatory criteria that HHS had established for qualification under clause (II). *Id.*[7]

Heartland then returned to the district court with a two-pronged attack on HCFA's decision. First, it filed a motion to enforce the *Heartland I* judgment, seeking a declaration of SCH status as well as reimbursement and interest. Second, Heartland filed a separate action challenging HCFA's decision on remand under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. In light of the death of Judge Greene, both matters were reassigned to another district judge. Heartland and HHS agreed to stay the APA action pending the disposition of Heartland's motion to enforce the judgment.[8]

---

[7]Specifically, HCFA said that Heartland had failed to demonstrate "that no more tha[n] 25 percent of the residents who become hospital inpatients or no more than 25 percent of the Medicare beneficiaries who become hospital inpatients in the hospital's service area are admitted for care to other like hospitals within a 35 mile radius of the hospital or, if larger, within its service areas [as] required by 42 C.F.R. 412.92(a)(1)(i)." *Heartland Hosp.*, PRRB Case No. 93-0648E, at 34 (Sept. 6, 2000).

[8]The district court further stayed the APA action pending resolution of this appeal.

In August 2004, the district court denied that motion. *Heartland Hosp. v. Thompson* (*Heartland II*), 328 F. Supp. 2d 8 (D.D.C. 2004). The court determined that "Judge Greene did not intend to grant [Heartland] SCH status, reimbursement and interest." *Id.* at 15. "[A]ll that was required by the prior judgment," the court said, was that HHS "reconsider[] the alternatives to" the MSA-based definition of "urban area." *Id*. Finding that HHS had reconsidered those alternatives and "concluded that they are inferior," the court held that Heartland had received all the relief the judgment required. *Id.* Thereafter, Heartland filed the instant appeal.

II

The parties spend the bulk of their briefs disputing whether Judge Greene's 1998 opinion in *Heartland I* vacated the rural area requirement. Notwithstanding that the word "vacate" does not appear in that opinion, Heartland contends that the decision vacated the requirement by pronouncing the regulations "invalid," and that vacatur entitled the hospital to SCH status and reimbursement. HHS maintains that the decision did not vacate the rural area requirement, but merely remanded for consideration of alternative definitions of "urban area."

We do not need to resolve this interpretive dispute in order to decide this case. Success on a motion to enforce a judgment gets a plaintiff only "the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein." *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975). Regardless of whether the district court vacated the rule, it is clear that the *Heartland I* judgment does not entitle the hospital to the remedy it seeks: a declaration of SCH status and reimbursement. Our reasoning is set forth below.

A

Even if *Heartland I* vacated the rural area requirement, nothing on the face of that decision compelled HHS to grant Heartland SCH status and reimbursement. The court's order merely remanded the case to HHS "for action consistent with the foregoing opinion." *Heartland I*, order at 1. The "foregoing opinion," in turn, found the rural area requirement in the HHS regulations invalid solely on the ground that HHS had "failed to consider or respond to reasonable alternatives to the use of [MSAs] as the relevant measure of an urban area," and hence as the definition of a rural area. *Heartland I*, slip op. at 24. Accordingly, even if *Heartland I* vacated the rural area requirement, the only obligation it expressly imposed on the agency was to consider the two alternatives suggested during the comment period.

That is precisely what the agency did. After the court issued its decision in *Heartland I*, HHS considered the alternatives and then reissued its MSA-based definition of "urban area" and "rural area." *See* 64 Fed. Reg. 24,716, 24,732 (May 7, 1999) (setting forth the proposed definition and soliciting comments); 64 Fed. Reg. 41,490, 41,513-15 (July 30, 1999) (adopting the definition and rejecting alternatives). Thereafter, in its decision on remand from *Heartland I*, HCFA incorporated HHS's rationale for rejecting the alternatives and adopting the MSA-based definition. In short, the agency complied with the judgment in *Heartland I* by filling the analytical gap identified in that opinion.

Nor did *Heartland I* imply that anything more was required. It certainly did not suggest that, after considering the alternatives, the agency was barred from reinstating the same

definition or from reaching the same result through case-by-case adjudication. To the contrary, the usual rule is that, with or without vacatur, an agency that cures a problem identified by a court is free to reinstate the original result on remand.[9] Nothing in *Heartland I* suggested that this usual rule would not apply because, for example, the rural location requirement was irredeemable. Rather, Judge Greene held that the requirement was "well within the realm of permissible interpretations of" the Medicare statute, *Heartland I*, slip op. at 15, that "the Secretary [had] established . . . a rational basis for the . . . requirement," *id.* at 19, and that it was "plausible . . . that [MSAs] are a valid measure of urban areas," *id.* at 23.

This is not to say, of course, that the agency's reaffirmation of the same result in this case is invulnerable to attack on a ground other than the agency's failure to consider reasonable alternatives -- for example, on the ground that the agency *arbitrarily* rejected those alternatives. *See Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 48, 56 (1983). But whether or not the agency's post-*Heartland I* rejection of the alternatives was arbitrary is a determination that must be made in Heartland's separate APA action challenging HHS's post-remand decisions. Nothing in *Heartland I* itself addresses that question, and therefore a motion

---

[9]*See, e.g.*, *FEC v. Akins*, 524 U.S. 11, 25 (1998) (noting that, after vacatur and remand, an agency "might later, in the exercise of its lawful discretion, reach the same result for a different reason" (citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943))); *NTEU v. FLRA*, 30 F.3d 1510, 1514 (D.C. Cir. 1994) (noting that "we frequently remand matters to agencies while leaving open the possibility that the agencies can reach exactly the same result as long as they . . . explain themselves better or develop better evidence for their position").

to enforce the *Heartland I* judgment is not the proper means to answer it.

The same is true for Heartland's oblique suggestion that if Judge Greene vacated the rural area requirement, then HHS's attempt to reimpose the requirement on remand -- whether through rulemaking or adjudication -- effectively constituted impermissible retroactive rulemaking. *See* Appellant's Reply Br. at 2 n.1; *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 215 (1988) (holding that HHS "has no authority to promulgate retroactive cost-limit rules" under the Medicare Act). Our cases establish a five-factor "framework for evaluating retroactive application of rules announced in agency adjudications." *Cassell v. FCC*, 154 F.3d 478, 486 (D.C. Cir. 1998) (quoting *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C. Cir. 1987) (en banc)). Nothing in *Heartland I* indicates whether HCFA's adjudicatory application of the rural requirement would survive examination under that framework. Accordingly, that, too, is a determination that must await disposition of Heartland's separate APA action.

B

Heartland contends that, even if the face of *Heartland I* did not require HHS to grant the hospital SCH status, vacation of the rural area requirement would have "eliminat[ed] the only remaining barrier to SCH status for Heartland." Appellant's Br. at 14. That is so, the hospital maintains, because "[u]nder the applicable statute and regulations, the [PRRB] can grant expedited judicial review only if it first determines that there are no disputed issues of fact and no disputed legal issues that the Board is authorized to resolve." *Id.* at 14-15. Thus, Heartland insists, by granting its request for expedited review, the PRRB

"necessarily determined that Heartland had met all the statutory and regulatory criteria to obtain SCH status and that the only remaining question was the validity of [HHS's] rural requirement." *Id.* at 21.

There are two problems with this argument. First, even if Heartland is correct that at the time of *Heartland I* the rural area requirement was the only hurdle still standing between it and SCH status, the judgment did not say so. Even if the agency had implicitly decided prior to *Heartland I* that the hospital met all the other SCH criteria, at best that would mean the post-remand denial was inconsistent with those implicit findings. And while such inconsistency might justify a court in concluding that HCFA's post-*Heartland I* denial of the hospital's SCH status was arbitrary and capricious (and thus in violation of the APA), that is a conclusion Judge Greene did not reach in *Heartland I* itself.

The second -- and more significant -- problem with Heartland's argument is that it reads too much into the PRRB's expedited judicial review determination. In denying Heartland SCH status, both HCFA and the intermediary relied solely on the hospital's failure to satisfy the regulation's rural location requirement. Neither considered whether there might be other reasons for denial; neither said that, but for the regulation, the hospital's application would have been granted.[10] Similarly,

_____

[10]*See* Letter from Linda Richter, Mutual of Omaha, to Christopher Crosswhite, Vinson & Elkins, at 2-3 (Feb. 1, 1994) ("HCFA's denial of SCH status was based on [Heartland] being located in an *urban area* with like hospitals located closer than *35 miles*. . . . HCFA has made no determination as to whether [Heartland] met all criteria other than being located in a rural area.").

when Heartland asked the PRRB to grant expedited review, it emphasized that "the sole basis for its appeal of HCFA's denial is that the regulatory requirement of location in a rural area is invalid." Provider's Request for Expedited Judicial Review, *Heartland Hosp. v. Mutual of Omaha Ins. Co.*, PRRB Case No. 93-0648, at 10-11 (Mar. 6, 1995). And when the PRRB granted Heartland's request, it did so on the ground that it was "without authority to decide the legal question of whether the Medicare regulation governing the classification as a sole community hospital . . . is valid." Letter from Kues to Crosswhite at 2.

Nor is Heartland correct that the statute and regulation *required* the PRRB to decide every factual and legal question within its power -- including those on which the intermediary did not rely in recommending denial of Heartland's SCH status -- before it could grant expedited review regarding the validity of the legal ground on which the intermediary did rely. The statute itself states only that health care providers "have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines . . . that it is without authority to decide the question." 42 U.S.C. § 1395*oo*(f)(1). Here, the intermediary's denial of Heartland's application on the basis of the rural location requirement plainly involved "a question of law or regulations," that was "relevant to the matters in controversy," and that the PRRB was "without authority to decide." *See Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 406 (1988) ("Neither the fiscal intermediary nor the Board has the authority to declare regulations invalid."). Thus, Heartland's appeal fell squarely within the expedited review

provision of the statute whether or not Heartland met the other SCH criteria.[11]

The HHS regulation that governs expedited review similarly permits expedition if there are no "factual or legal issues in dispute on *an issue* within the authority of the Board to decide." 42 C.F.R. § 405.1842(g)(2) (emphasis added). The regulation does not suggest that the PRRB is barred from granting expedited review unless it first decides all factual questions within its competence, including those regarding other issues not relied upon by HCFA or the intermediary. Indeed, the regulatory language is to the contrary.[12] As Heartland stresses, HHS did state at the time the regulation was promulgated that the statute's expedited judicial review provision "authorizes the

---

[11]Although Heartland correctly notes that "the Board *can* 'make any other revisions on matters covered by [a] cost report . . . even though such matters were not considered by the intermediary in making such final determination,'" *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 405-06 (1988) (quoting 42 U.S.C. § 1395*oo*(d)) (emphasis added), the statute does not *compel* the Board to do so, *see* 42 U.S.C. § 1395*oo*(d) ("The Board shall have the *power* to [consider] matters . . . not considered by the intermediary." (emphasis added)).

[12]*See* 42 C.F.R. § 405.1842(g)(2) ("The Board has the authority to decide when two or more issues are sufficiently related to preclude separation for purposes of an expedited review determination on one or more of them and a hearing on the other or others."); *id.* § 405.1842(h)(6) ("The Board's determination [to grant expedited judicial review] does not affect the right of the provider to a Board hearing for issues for which the provider did not request expedited review, or for which the Board determines it does have the authority to decide, or for which the Board did not make a determination and the provider did not request judicial review.").

bypassing of the required Board hearing only with respect to those matters in dispute for which *the sole issue to be resolved* is the validity of the law, regulations, or HCFA rulings which the Board cannot decide." Appellant's Br. at 7 (quoting Provider Reimbursement Review Board, Expedited Administrative Review, Final Rule, 48 Fed. Reg. 22,920, 22,922 (May 23, 1983)) (emphasis added in Appellant's Br.). But in this instance, the sole issue to be resolved -- because it was the sole basis for Heartland's appeal -- was the validity of the rural location requirement, an issue that involved no factual or legal issues within the Board's competence.

In sum, both the statute and the regulation permitted the Board to grant expedited review regarding the validity of the rural location requirement without first deciding all other possible bases for denying Heartland SCH status -- none of which were addressed by the intermediary, by HCFA, or by Heartland. Hence, in granting expedited review, the Board did not determine -- "necessarily" or otherwise -- that Heartland had met all the statutory and regulatory criteria for such status.[13]

---

[13]*Tucson Medical Center v. Sullivan*, 947 F.2d 971 (D.C. Cir. 1991), is not to the contrary. In *Tucson*, we stated in dictum that, by granting petitions for expedited review, the PRRB had "necessarily found that there existed an amount in controversy in excess of $10,000" because "the PRRB does not have jurisdiction to hear an appeal from the fiscal intermediary's determination unless 'the amount in controversy is $10,000 or more.'" *Id.* at 980 (quoting 42 U.S.C. § 1395*oo*(a)(2)). Although the statute expressly predicates PRRB jurisdiction on a $10,000 amount in controversy, it does not -- as discussed above -- predicate jurisdiction or anything else upon the resolution of every possible alternative basis for denial of a hospital's SCH application.

## III

For the foregoing reasons, we conclude that, regardless of whether the district court intended to vacate the rural area requirement in *Heartland I*, the court's judgment did not entitle Heartland Hospital to the relief it seeks on this appeal. What the judgment did require was what Heartland received -- HHS's reconsideration of the alternatives to the MSA-based definition of "urban area." Accordingly, if Heartland is to obtain further relief, it must seek it through a separate APA challenge to HCFA's post-*Heartland I* decisions, rather than through a motion to enforce the *Heartland I* judgment itself. The district court's denial of Heartland's motion is therefore

*Affirmed.*