# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 16, 2012         Decided March 19, 2013

No. 11-1431

LONE MOUNTAIN PROCESSING, INC.,
PETITIONER

v.

SECRETARY OF LABOR, ET AL.,
RESPONDENTS

On Petition for Review of an Order of the
Federal Mine Safety & Health Review Commission

*Noelle Holladay True* argued the cause for petitioner. With her on the briefs was *Marco M. Rajkovich Jr.* *Melanie Kilpatrick* entered an appearance.

*Jerald S. Feingold*, Attorney, U.S. Department of Labor, argued the cause for respondents. With him on the brief was *W. Christian Schumann*, Counsel. *John T. Sullivan*, Attorney, Mine Safety and Health Review Commission, entered an appearance.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, SENTELLE, *Senior Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Lone Mountain Processing, Inc., petitions for review of an order of the Federal Mine Safety and Health Review Commission denying the company's motions to reopen closed civil penalty proceedings. We remand the order because the Commission failed to explain its departure from its own precedent.

I

Under the Federal Mine Safety and Health Act of 1977, the Mine Safety and Health Administration (MSHA) inspects mines, issues citations for safety violations, and proposes civil penalties, all on behalf of the Secretary of Labor. *See* 30 U.S.C. §§ 813-815; OFFICE OF THE FEDERAL REGISTER, UNITED STATES GOVERNMENT MANUAL 2012, at 258 (2012). The Commission assesses the penalties and adjudicates disputes over their terms. *See* 30 U.S.C. §§ 815, 820(i); *see also* 30 U.S.C. § 823 (establishing the Commission). In other words, MSHA plays the roles of police and prosecutor, and the Commission plays the role of judge.

A mine operator has thirty days to contest a citation and another thirty days to challenge any proposed penalties. *See* 30 U.S.C. § 815(a).

> If, within 30 days from the receipt of the notification . . ., the operator fails to notify the Secretary that he intends to contest the citation or the proposed assessment of penalty, . . . the citation and the proposed assessment of penalty shall be deemed a final order of the Commission and not subject to review by any court or agency.

*Id.*

In June 2010, MSHA cited Lone Mountain thirteen times for a range of regulatory violations. In July 2010, the company filed timely "notices of contest" with the Commission. But when, in August 2010, Lone Mountain received proposed penalty assessments in connection with one group of citations, the company failed to challenge them within the thirty-day window. *See id*. In December 2010, MSHA mailed Lone Mountain a notice of delinquency, reminding Lone Mountain that it had missed the thirty-day deadline and requesting immediate payment of the now-final penalty assessment, plus accrued interest. In 2011, the process repeated itself: MSHA mailed a proposed assessment in January for a second set of citations issued in June 2010; Lone Mountain missed the thirty-day deadline to contest; and, in April, MSHA mailed a notice of delinquency. In June 2011 — six months after receiving its first notice of delinquency and two months after receiving the second — Lone Mountain finally filed motions to reopen the first two civil penalty cases in which proposed assessments had become final orders. After filing its motions to reopen, Lone Mountain let history repeat itself. In July 2011, Lone Mountain failed to respond to a third proposed civil penalty assessment notice, and, in September 2011, filed a third motion to reopen. In each of its motions, Lone Mountain's only excuse was, essentially, that the proposed penalty assessment notices got lost in the mail — not the mail system of the United States Postal Service, but rather the *internal* mail system operated by the company.

On October 11, 2011, the Commission issued an order consolidating and denying Lone Mountain's motions, holding that Lone Mountain "failed to establish good cause" for reopening. *See Lone Mountain Processing, Inc.*, 33 FMSHRC 2373, 2376 (2011).

4

II

The Act gives the Commission the power to set most of its own procedures, *see* 30 U.S.C. § 823(d)(2), which it has done through a series of regulations. Of particular relevance to this dispute is a regulation that provides:

> On any procedural question not regulated by the Act, these Procedural Rules, or the Administrative Procedure Act . . ., the Commission and its Judges shall be *guided so far as practicable* by the Federal Rules of Civil Procedure[.]

29 C.F.R. § 2700.1(b) (emphasis added). Congress could have made the Federal Rules applicable to the Commission but did not. *Compare* 30 U.S.C. § 823(d)(2) (granting the Commission authority to set many of its own procedural rules) *with* 29 U.S.C. § 661(g) (making the Federal Rules of Civil Procedure applicable by default rule to adjudications conducted by the Occupational Safety and Health Review Commission). And as the phrase "guided so far as practicable" demonstrates, the Commission has not bound itself to follow the Federal Rules, either; rather, the Commission has decided that they will serve as a model.

Following the guidance of Federal Rule of Civil Procedure 60(b), the Commission has long held that it may reopen otherwise final orders, *see, e.g.*, *Jim Walter Res., Inc.*, 15 FMSHRC 782, 786-89 (1993), including those that have been rendered final pursuant to 30 U.S.C. § 815(a). *See, e.g.*, *Rocky Hollow Coal Co., Inc.*, 16 FMSHRC 1931, 1931-32 (1994). Rule 60(b) states, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . mistake, inadvertence, surprise, or excusable

neglect[.]" FED. R. CIV. P. 60(b). Thus, by its own choice, the Commission must be "guided so far as practicable" by a rule that states that it "may" reopen final orders. This leaves the Commission with much discretion, but that discretion is not unfettered.

Lone Mountain argues that the Commission abused that discretion by departing from its own precedent without explanation, and we agree. We need not consider, therefore, Lone Mountain's alternate arguments that Rule 60(b) and the cases interpreting it call for reopening or that general principles of equity require the same. We leave those to the Commission on remand.

Over the years, mine operators have failed to respond to MSHA citations and proposed penalty assessments within the thirty-day windows prescribed by 30 U.S.C. § 815(a) and subsequently have sought the Commission's lenience by filing motions to reopen. In turn, the Commission has developed a body of precedent regarding how to treat such motions based on the facts in each case.

Though Lone Mountain did not timely contest MSHA's proposed penalty assessments, it did contest the underlying citations. In past orders granting motions to reopen, the Commission has repeatedly stated that the timely challenge to a citation gives a "clear" indication that a mine operator also "intend[s] to contest the proposed penalty for that citation." *Oldcastle Stone Prods.*, 31 FMSHRC 1103, 1104 (2009); *see also McCoy Elkhorn Coal Corp.*, 33 FMSHRC 1, 2 (2011) (applying a similar rule as *Oldcastle*); *Phelps Dodge Sierrita, Inc.*, 24 FMSHRC 661, 662 (2002) (same). Similarly, Lone Mountain highlighted in its motions to reopen that it had timely contested the initial MSHA citations. The Commission, however, seems to have missed the point. It

failed to discuss both Lone Mountain's timely contests, and the relevant precedent. If the Commission had been "supply[ing] a reasoned analysis" regarding its "prior policies and standards," *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970), it would have either held that *Oldcastle Stone Products* and similar Commission orders involving timely citation contests cut in favor of Lone Mountain, or it would have explained why they do not apply in Lone Mountain's case. But despite their obvious relevance, the Commission failed even to mention or discuss, let alone distinguish, those orders. Because the Commission failed to do so, we hold that the order is arbitrary and capricious. As we have long held, "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Greater Boston Television Corp.*, 444 F.2d at 852. Failing to supply such analysis renders the agency's action arbitrary and capricious. *See, e.g.*, *Ramaprakash v. FAA*, 346 F.3d 1121 (D.C. Cir. 2003).

It is important to note that we do not require agencies to address every conceivably relevant line of precedent in their archives. For instance, "[w]e may permit agency action to stand without elaborate explanation where distinctions between the case under review and the asserted precedent are so plain that no inconsistency appears." *Bush-Quayle '92 Primary Comm., Inc. v. FEC*, 104 F.3d 448, 454 (D.C. Cir. 1997). Furthermore, as then-Judge Roberts wrote, "[a]n agency is by no means required to distinguish every precedent cited to it by an aggrieved party." *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 60 (D.C. Cir. 2004) (citations omitted).

But an agency must address precedent directly on point. Here, the resemblance between the present case and cases involving timely citation contests — for instance, *Oldcastle*

*Stone Products*, *McCoy Elkhorn Coal Corp.*, and *Phelps Dodge Sierrita*—is significant enough that it is incumbent upon the Commission to explain why the line of precedent either does not apply, or why departure from that line is warranted in this case. In particular, when weighing the various factors for and against granting the motions to reopen, the Commission must be clearer in articulating "which factors are significant and which less so, and why." *LeMoyne-Owen Coll.*, 357 F.3d at 61.

To be sure, there may be reasons for the Commission to deny Lone Mountain's motions to reopen. Lone Mountain waited six months after receiving its first notice of delinquency to file its first motion to reopen. Lone Mountain also failed to contest a third proposed penalty assessment even after filing the first and second motions to reopen. Indeed, the Commission cited prior orders holding that these factors worked against granting motions to reopen. *See Lone Mountain Processing, Inc.*, 33 FMSHRC at 2375. But the crucial issue is not what the Commission included, but what the Commission *omitted*: any discussion of Lone Mountain's timely challenge of its citations. Because the Commission failed to explain why such challenges justified granting motions to reopen in the prior orders in which mine operators had timely contested their citations, but not in *Lone Mountain*, we must remand.

In this case, "[r]emand will permit the Commission to justify its approach or to reconsider its . . . determination." *Bush-Quayle '92 Primary Comm., Inc.*, 104 F.3d at 455. The Commission may well arrive at the same result it reached originally, *see, e.g.*, *Heartland Regional Med. Ctr. v. Leavitt*, 415 F.3d 24 (D.C. Cir. 2005), but it must do so with more clarity than it showed in the first instance. If the Commission did indeed carefully deliberate over whether the facts in this

case distinguish it in a material way from the precedent crediting timely citation contests, then it will be easy for the Commission to address the issue on remand.

## III

For the foregoing reasons, we grant the petition for review and remand the order to the Commission for reconsideration consistent with this opinion.

*So ordered.*