# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Submitted January 12, 2023                    Decided April 7, 2023
                                              Reissued June 6, 2023

No. 22-1088

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION,
PETITIONER

v.

WESTFALL AGGREGATE & MATERIALS, INC. AND FEDERAL
MINE SAFETY AND HEALTH REVIEW COMMISSION,
RESPONDENTS

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission

*Emily Toler Scott*, Counsel for Appellate Litigation, U.S. Department of Labor, and *Jennifer A. Ledig*, Attorney, were on the briefs for petitioner.

*Cary W. Purcell* was on the brief for respondents.

Before: PILLARD and PAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

2

EDWARDS, *Senior Circuit Judge*: The Mine Safety and Health Administration ("MSHA") is an agency within the Department of Labor whose mission is to administer the provisions of the Federal Mine Safety and Health Act ("Mine Act"), 30 U.S.C. § 801 *et seq*. The Mine Act authorizes the Secretary of Labor ("Secretary"), acting through MSHA, to promulgate mandatory safety and health standards, inspect mines, issue citations and orders for violations of the Act or mandatory standards, and propose penalties for those violations. The Mine Act established the Federal Mine Safety and Health Review Commission ("Commission"), an independent agency with the authority to adjudicate disputes over citations, orders, and penalties issued by MSHA that mine operators contest. This case involves a petition filed by the Secretary to review a decision issued by the Commission denying as moot a request filed by a mine operator, Westfall Aggregate & Materials, Inc. ("Westfall"), to reopen a penalty assessment issued against the operator more than a decade ago.

In February 2011, an inspector for MSHA discovered a crane at Westfall operating on site with no working service brakes. The inspector issued Westfall a withdrawal order commanding the crane's immediate removal, as well as a citation for the incident. Westfall immediately complied with the withdrawal order. A citation was issued and a penalty was assessed against Westfall. The penalty was deemed a final order after thirty days when Westfall failed to contest it. *See* 30 U.S.C. § 815(a). On October 6, 2011, MSHA mailed a delinquency notice to Westfall, notifying the operator that interest on the penalty would accrue. Westfall did not respond to this notice.

In July 2019, eight years after the penalty was deemed a final order, and only after MSHA had begun enforcement proceedings against the operator for failing to pay its

delinquent penalties, Westfall filed a motion to reopen the matter. It claimed that its untimely challenge "resulted from excusable neglect, mistake, inadvertence and other good causes[.]" Joint Appendix ("J.A.") 1. The operator argued that because MSHA did not include a duplicate copy of the citation with its penalty assessment, Westfall staff misinterpreted it to be related instead to the "closed" withdrawal order, J.A. 2, and archived both documents in a "closed file." J.A. 14. Westfall claimed that it failed to raise a timely challenge because its managers never reviewed the citation penalty. J.A. 2-3. Westfall thus contended that its neglect was excusable, its misunderstanding was in good faith, and justice weighed in favor of granting its motion. *See* J.A. 5. The Secretary opposed the motion to reopen, asserting that the penalty assessment was properly issued by MSHA and received by Westfall, that the motion to reopen was untimely, and that there was no good cause to justify reopening the matter. *See* J.A. 19-25.

In 2022, a two-member majority of the Commission found that, because Westfall "claims not to have received a written citation for the assessment, and the Secretary [of Labor] failed to provide sufficient evidence of a citation," "there is no final order in this case." J.A. 53. Over a strong dissent, the Commission "dismiss[ed] the operator's request to reopen as moot." J.A. 53. It is clear from the record in this case that the Commission's decision cannot withstand review. We note in particular that the Commission's majority opinion relies principally on an assumption that Westfall "claims not to have received a written citation for the assessment." However, Westfall has made no such claim. The majority opinion also rests on a finding that "the Secretary failed to provide sufficient evidence of a citation." The record belies this assertion.

In sum, the Commission's decision relies on a ground not raised or addressed by the parties, is devoid of substantial

4

evidence to support its principal findings, and ignores the potential applicability of Federal Rule of Civil Procedure 60(b) covering motions to reopen. We are therefore constrained to reverse and remand the case for further proceedings.

## I.   BACKGROUND

### A.  Statutory and Regulatory Background

As noted above, the Mine Act was enacted to "protect the health and safety of the Nation's coal or other miners." 30 U.S.C. § 801(g). It empowers the Secretary of Labor, acting through MSHA, to promulgate mandatory safety and health standards, inspect mines, and enforce the Mine Act by issuing citations, civil penalties, and other orders. *Id*. §§ 811(a), 813(a), 814(a), 815(a), 817(a), 820(a). The Mine Act also established the Commission, an independent agency empowered to review citation, penalty, and order decisions adjudicated by administrative law judges. *Id*. §§ 816(a)(1), 823.

***Citations and Penalties***. "If, upon inspection or investigation" of a worksite, MSHA finds that an operator has violated the Mine Act, it shall, "with reasonable promptness," issue a citation to the operator that describes "in writing," "with particularity," the nature of the violation. *Id*. § 814(a) ("section 814 citation"). The default process for calculating penalties is through a regular assessment process, which entails applying a formula to six statutory penalty criteria. *Id.* § 820(i); 30 C.F.R. § 100.3(a)(1). For regular proposed penalty assessments, "MSHA's Office of Assessments provides operators and, in turn, Judges with an 'Exhibit A' that consists of a penalty report detailing the penalty points assessed under each statutory factor"; the "exhibit provides the operator . . . an explicit explanation of the bases for the proposed penalty.*" Sec'y of Lab., MSHA v. Am. Coal Co.*, 38 FMSHRC 1987, 1991

(2016), *aff'd sub nom. Am. Coal Co. v. FMSHRC*, 933 F.3d 723 (D.C. Cir. 2019).

"MSHA may elect to waive the regular assessment under § 100.3 if it determines that conditions warrant a special assessment." 30 C.F.R. § 100.5(a). This will result in a higher penalty than would be associated with a regular assessment. *See* MSHA, SPECIAL ASSESSMENT GENERAL PROCEDURES 1-2 (2021). "When MSHA determines that a special assessment is appropriate, the proposed penalty [is] based on the six criteria set forth in § 100.3(a)." 30 C.F.R. § 100.5(b). However, "[a]ll findings shall be in narrative form." *Id.*

"Special assessments . . . take longer to formulate and finalize" than regular assessments, so "[t]here is often a gap between the issuance of the citation and the operator's receipt of the special assessment." Petitioner's Br. 8. In any event, MSHA must notify a cited operator by certified mail "within a reasonable time" of any proposed penalty assessment. 30 U.S.C. § 815(a). MSHA is not required to send the operator a duplicate copy of the section 814 citation alongside its mailed penalty assessment. *See* 29 C.F.R. § 2700.25; 30 C.F.R. §§ 100.7(a), 100.8(a).

If the mine operator does not respond within thirty days to MSHA's proposed penalty assessment by either paying the fine or notifying the agency of its intention to contest, the proposed penalty is deemed a final order of the Commission and not subject to review by any court or agency. 30 U.S.C. § 815(b)(1)(A).

***Reopening a final order***. The Commission may at its discretion reopen a final order, using the Federal Rules of Civil Procedure for guidance. *See Jim Walter Res., Inc*., 15 FMSHRC 782, 787 (1993) (explaining that, "[i]n reopening

final orders, the Commission has found guidance in, and has applied, 'so far as practicable,' Rule 60(b) [of the Federal Rules of Civil Procedure], dealing with relief from judgments or orders." (citing 29 C.F.R. § 2700.1(b))). Rule 60(b) motions to reopen may be based on "mistake, inadvertence, surprise, or excusable neglect;" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), 60(b)(6). Such motions must be made "within a reasonable time," or – if for reasons of "mistake, inadvertence, or excusable neglect" – not more than one year after the order was entered. Fed. R. Civ. P. 60(c)(1).

***Withdrawal orders***. In addition to issuing citations and penalties, MSHA inspectors may issue a withdrawal order, requiring immediate, on-site action to address any "imminent danger" to workers' safety. 30 U.S.C. § 817(a). Withdrawal orders compel all but exempted persons "to be withdrawn from" the designated area until the agency "determines that such imminent danger and the conditions or practices which caused such imminent danger no longer exist." *Id*. MSHA is not precluded from also issuing citations and proposing penalties after issuing a withdrawal order. *See id*.

## B. Factual Background

On February 28, 2011, MSHA inspected Westfall's operating site. J.A. 22. MSHA issued six citations for various violations – all of which were assigned regular assessment penalties and paid in full. The MSHA inspector also discovered a Pettibone 30 crane operating on site with no working service brakes and issued two orders: (1) Withdrawal Order No. 6559329, mandating the crane's immediate removal, J.A. 12; and (2) Citation No. 6559330, a section 814 citation describing the safety violation, Petitioner's Br. Addendum ("add.") C. Westfall immediately complied with Withdrawal Order No. 6559329 by removing the Pettibone 30 crane from the

worksite. J.A. 13. That order clearly states, "Citation NO. 6559330 is being issued in conjunction with this order." J.A. 12. Five minutes later, MSHA served a Westfall manager with the referenced citation. Petitioner's Br. add. C. The citation explains that it was issued in response to the same event as the withdrawal order. *See id*. And it describes the non-working brakes as a "hazard" that could result in "[c]rushing fatal injuries[.]" *Id*.

Finding that "[t]he gravity of the violation was considered serious," MSHA determined that the proposed penalty warranted a special assessment. J.A. 11. "Based on the six criteria set forth in 30 C.F.R. l00.3(a)" and information provided to it, MSHA "proposed that [Westfall] be assessed a civil penalty of $16,400." J.A. 11. MSHA sent the proposed penalty to the operator via FedEx. A Westfall employee signed for the FedEx package on July 20, 2011. *See* J.A. 28. The mailing explained to Westfall that it had "30 days from receipt of [the] proposed assessment" to pay or contest the fee before it was deemed a final order of the Commission. J.A. 7, 8. Westfall did not contest the Citation No. 6559330 proposed penalty assessment. Thus, it was deemed a final order thirty days later, on August 19, 2011 ("2011 Final Order"). *See* 30 U.S.C. § 815(a).

Two months later, on October 6, 2011, MSHA notified Westfall that interest on the 2011 Final Order penalty would accrue if Westfall remained delinquent. On June 13, 2019, MSHA issued Westfall an additional citation for its ongoing failure to pay for its mounting civil penalties. Westfall did not respond.

8

### C. Procedural Background

*Eight years* after the proposed penalty assessment was deemed a final order of the Commission, Westfall entered into a payment plan with MSHA and filed a motion to reopen with the Commission. As explained above, Westfall contended that "excusable neglect, mistake, inadvertence, and other good causes" justified reopening. J.A. 1. The operator conceded that it had received the proposed penalty. But it claimed that members of the Westfall staff "mistakenly and inadvertently interpreted [it] as a non issue or error" because they believed it to be associated with the long-resolved Withdrawal Order No. 6559329. J.A. 4, 14. Westfall claimed that its staff "placed the Citation #6559330 [penalty assessment] in the [Withdrawal Order] #6559329 'closed file.'" J.A. 14. Westfall also claimed that "[t]he clear absence of the 'Mine Citation/Order' form from the Citation #6559330 [proposed penalty assessment] compounded the confusion." J.A. 36. Due to the operator's "mistake[s], Petitioner's management never saw or reviewed Citation #6559330 and therefore was not in a position to or aware of the need to timely contest Citation #6559330." J.A. 2.

In further support of its motion, Westfall pointed to its "clear history of timely contesting MSHA citations" as evidence that it would have timely contested the citation "[i]f Petitioner's management had been aware of Citation #6559330." J.A. 4. It pointed to its immediate compliance with the withdrawal order and subsequent reforms to internal "procedures and protocol[s]" as indicative of its good faith. J.A. 5. And it explained that its lack of familiarity with MSHA enforcement procedures contributed to its staff's "inadvertent and mistaken interpretation and treatment of [Withdrawal Order] #6559329 and Citation #6559330." J.A. 5.

In response to Westfall's motion, the Secretary argued that the "extraordinary remedy" of reopening should not be granted. The Secretary contended that Westfall's Rule 60(b)(1) motion alleging "mistake, inadvertence, surprise, or excusable neglect," should have been raised "not more than one year after final judgment." J.A. 19-20, 22-25. In response, Westfall disavowed any claim for relief under Rule 60(b)(1) and instead rested on the catch-all language of Rule 60(b)(6) (which provides that a motion to reopen may be granted for "any other reason justifying relief"). J.A. 48. The operator reiterated the claim that its "failure to be aware of [and respond to] the assessment at an earlier date was a direct result of the confusing language and the presentation of the initial citation[.]" J.A. 49.

In 2022, a two-member Commission majority dismissed Westfall's motion to reopen as moot and effectively vacated the contested final order. It ignored Westfall's actual allegations and found instead that the operator had "claim[ed] not to have received a written citation for the [penalty] assessment." J.A. 53. The majority cited nothing in the record to support this assertion. The majority also concluded that the Secretary did not provide evidence that Citation No. 6559330 existed and therefore concluded that it could not "find that the assessment for violation No. 6559330 ever became a final Commission order" from which relief could be granted. J.A. 53. In support of its decision, the majority cited one case, *Dittrich Mechanical and Fabrication, Inc.*, 32 FMSHRC 1599 (2010), in which the Commission held that "if the Secretary fails to provide [evidence of a properly issued citation]," then the Commission "cannot find that the assessment was ever effective." J.A. 52 (citation and internal quotation marks omitted).

The dissenting member of the Commission objected to the majority's disposition of the case because, in his view, "the

record establishes that a citation was validly issued pursuant to section 104(a) of the Mine Act, there is a final order, and the motion to reopen was filed out of time." J.A. 57. The dissent also pointed out that this case "is readily distinguishable from *Dittrich*" because "Westfall *concedes that it received a citation in writing from MSHA*." J.A. 55.

The Secretary now petitions for review of the Commission's decision. For the reasons explained below, we grant the Secretary's petition, reverse the decision of the Commission, and remand the case for further proceedings.

## II.    ANALYSIS

### A.  Standard of Review

The Secretary filed a petition for review with this court on May 23, 2022, within 30 days of the Commission's order, as required by the Mine Act. 30 U.S.C. § 816(b). This court has jurisdiction to review the final order of the Commission. *Id*. "Upon such filing, the court . . .  shall have the power to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, or setting aside, in whole or in part, the order of the Commission and enforcing the same to the extent that such order is affirmed or modified." *Id*. § 816(a)(1); *see also id.* § 816(b) ("[T]he provisions of subsection (a) shall govern [petitions for review filed by the Secretary] to the extent applicable.").

The Mine Act states that, "[e]xcept as otherwise provided[,] . . . sections 551 to 559 and sections 701 to 706 of [the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706] shall not apply to [Commission orders], or to any proceeding for the review thereof." 30 U.S.C. § 956. The

standards controlling judicial review of Commission orders are therefore governed by the Mine Act and general administrative law principles. *See Sec'y of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 159 (D.C. Cir. 2006) ("[T]he fact that § 701(a)(2) [of the APA] itself is inapplicable does not mean that the principles underlying it are also inapplicable."); *see also KenAmerican Res., Inc. v. United States Sec'y of Lab.*, 33 F.4th 884, 888 (6th Cir. 2022).

"We review the factual findings of the Commission to ascertain if they are supported by substantial evidence; we review questions of law de novo; and we review the ALJ's evidentiary rulings for an abuse of discretion." *Mach Mining, LLC v. Sec'y of Lab., MSHA*, 728 F.3d 643, 659 (7th Cir. 2013) (internal citations omitted). "The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 30 U.S.C. § 816(a)(1); *see Marshall Cnty. Coal Co. v. FMSHRC*, 923 F.3d 192, 201 (D.C. Cir. 2019); *Cumberland Coal Res., LP v. FMSHRC*, 717 F.3d 1020, 1028 (D.C. Cir. 2013); *Sec'y of Lab. v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1104 (D.C. Cir. 1998). "Substantial evidence is determined by evaluating whether there is such relevant evidence as a reasonable mind might accept as adequate to support the [Commission's] conclusion." *Nat'l Cement Co. v. FMSHRC*, 27 F.3d 526, 530 (11th Cir. 1994) (quoting *Chaney Creek Coal Corp. v. FMSHRC*, 866 F.2d 1424, 1431 (D.C. Cir. 1989) (internal quotation marks omitted)). "Substantial evidence requires more than a scintilla but less than a preponderance." *Plateau Mining Corp. v. FMSHRC*, 519 F.3d 1176, 1194 (10th Cir. 2008) (internal quotation marks omitted).

Although the APA does not apply in judicial review of Commission orders, we are nonetheless guided by general administrative law principles in reviewing the Commission's

orders for abuse of discretion. *Noranda Alumina, LLC v. Perez*, 841 F.3d 661, 664 (5th Cir. 2016). For example, as the Fifth Circuit pointed out in *Noranda Alumina*, "[i]n both judicial and administrative contexts, courts review denials of motions to reopen for abuse of discretion." *Id*. And this court has made it clear that the Commission is bound by the principles of reasoned decision-making when adjudicating cases before it. *See Leeco, Inc. v. Hays*, 965 F.2d 1081, 1085 (D.C. Cir. 1992) ("It is especially important in cases where the [Commission] has taken a sharp turn from prior holdings that its actions be supported by reasoned decision-making."). Thus, we have found that the Commission abused its discretion by departing from its own precedent without explanation. *See Lone Mountain Processing, Inc. v. Sec'y of Lab.*, 709 F.3d 1161, 1163 (D.C. Cir. 2013).

It is also clear that a party may challenge an adverse order issued against it if it did not have a "full and fair opportunity to litigate" an important issue in an agency adjudication. *See, e.g.*, *First Nat'l Bank of Gordon v. Dep't of Treasury, Off. of Comptroller of Currency*, 911 F.2d 57, 62 (8th Cir. 1990). When an agency has failed to consider "conspicuous issues" that were before it, its failure "raises doubts about whether the agency appreciated the scope of its discretion or exercised that discretion in a reasonable manner." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020). In such situations, the appropriate recourse is to remand the case to the agency "so that it may consider the problem anew." *Id*.

### B. The Commission Erred in Deciding This Case on Grounds That Were Never Raised or Litigated by the Parties

As a rule, "we rely on the parties to frame the issues for decision" because "[o]ur adversary system is designed around the premise that the parties know what is best for them[.]" *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) (citation and internal quotation marks omitted). Furthermore, "[i]t is a basic tenet of administrative law that each party to a formal adjudication must have a full and fair opportunity to litigate the issues to be decided by the agency." *Trident Seafoods, Inc. v. NLRB*, 101 F.3d 111, 116 (D.C. Cir. 1996).

In this case, the Commission clearly ignored the facts and arguments presented by Westfall. Instead, it *sua sponte* purported to resolve this case on grounds that were not raised or litigated by the parties and pursuant to findings not supported by the record. This is the antithesis of reasoned decision-making. *See Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017) ("Having carefully examined both the Board's findings and its reasoning, we conclude the Board's opinion is more disingenuous than dispositive; it evidences a complete failure to reasonably reflect upon the information contained in the record and grapple with contrary evidence—disregarding entirely the need for reasoned decisionmaking."); *see also Nat'l Mining Ass'n v. Dep't of Lab.*, 292 F.3d 849, 871 (D.C. Cir. 2002) (reasoned decision-making requires consideration of relevant evidence in the record).

The Commission majority opinion says that Westfall "claim[ed] not to have received a written citation for the [penalty] assessment." J.A. 53. There is nothing in the record to support this assertion. Rather, the record indicates that

Westfall claimed that "excusable neglect, mistake, inadvertence, and other good causes" justified reopening this matter eight years after the disputed citation was deemed a final order of the Commission. J.A. 1. As discussed above, Westfall argued that its failure to raise a timely challenge was due to a "perfect storm of unintended and unfortunate events" resulting from its own staff's confusion and filing errors. J.A. 2, 5. In other words, the operator argued only that its failure to file a timely challenge should be excused – not that it had never received a citation.

What is worse is that the Commission never put the parties on notice that there was any issue regarding whether Westfall "claim[ed] not to have received a written citation." As a result, the parties never litigated this matter in the adjudication before the Commission. Indeed, the Secretary has made it clear to this court that had he been on notice that "the question of the issuance of Citation 6559330 was before the Commission," he "would have attached it to his response[.]" Petitioner's Br. 42-43. He has done so here. *See id.* add. C. And in reviewing the relevant materials, we have no doubt that the record supports the Secretary, not the Commission.

Not only did the Commission attribute to Westfall a claim that the operator never made, but it failed to address claims that Westfall did make in support of its motion to reopen. Westfall's motion may or may not have merit. This remains to be seen. What is clear here, however, is that the Commission erred in holding that the operator's request to reopen was "moot." J.A. 53. We amplify this point below.

### C. The Commission's Decision Finds No Support in the Record or in Any Applicable Precedent

As explained above, the Commission's decision relies on an unfounded assumption that Westfall claimed not to have received a written citation for the special assessment. Not only did Westfall not make the *claim* attributed to it by the Commission, but there is also nothing in evidence submitted by the parties to support the Commission's decision. This error completely distorted the Commission's judgment. What the record shows is that Westfall claimed only that its "*management* never saw or reviewed Citation #6559330"; however, the operator readily conceded that its "office staff received Citation #6559330[.]" J.A. 2 (emphasis added).

The simple point here is that there can be no reasoned decision-making when an agency relies on findings that are not supported by the record. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575-76 (2019) (affirming "remand[] to the agency" where "the evidence tells a story that does not match the explanation" given by the agency); *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 295 (2016) (a reasoned decision is one that rests on "adequate support in the record"); *Prairie State Generating Co. LLC v. Sec'y of Lab., MSHA*, 792 F.3d 82, 94 (D.C. Cir. 2015) (review must be "limited to assessing the record that was actually before the agency" (quoting *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012))); *Gilbert v. FMSHRC*, 866 F.2d 1433, 1440, 1443 (D.C. Cir. 1989) (remanding where the court could find no basis in the record to support the Commission's judgment).

In this same vein, the Commission's finding that the Secretary "failed to provide sufficient evidence of a citation," J.A. 53, is baseless. The citation was absent from the case record not because it was not delivered to Westfall, but because

no party believed it was at issue in the adjudication before the Commission. As already discussed, the record is replete with references to the citation, and the Secretary attached it to his briefings before this court. Petitioner's Br. add. C. And it is of no moment that the citation was absent from "MSHA's special assessment." J.A. 53. The law is clear that MSHA is not obligated to include a copy of its citations in its penalty assessments, *see* 29 C.F.R. § 2700.25; 30 C.F.R. § 100.7(a), so it does not matter that the citation was absent from MSHA's special assessment. As the dissent points out, what matters here is that "Westfall unambiguously concedes that it received a copy of Citation No. 6559330 in writing[.]" J.A. 54.

In an effort to bolster its disposition, the majority opinion cites *Dittrich*, 32 FMSHRC 1599. According to the majority, *Dittrich* makes it clear that "if an operator claims not to have received a written citation, . . . the Secretary must provide evidence that such a citation had been issued. And if the Secretary fails to provide such evidence, the Commission 'cannot find that the assessment was ever effective.'" J.A. 52 (quoting *Dittrich*, 32 FMSHRC at 1600). In *Dittrich*, the operator argued that "it never received a copy of the . . . citations that [were] the subject of the proposed penalty assessment at issue." 32 FMSHRC at 1599. However, Westfall has made no such claim in this case. Additionally, as the dissenting opinion aptly explains, the decision in *Dittrich* is plainly distinguishable from this case on every other score:

> Westfall *concedes that it received a citation in writing from MSHA*[.] . . . Additionally, the record also contains a copy of Order No. 6559329 which states that "Citation N[O]. 6559330 is being issued in conjunction with this order." Westfall Ex. B [J.A. 12]. The order and citation were issued after a[] MSHA inspector

observed a crane operating at the mine without service brakes. *Id*.; Westfall Ex. A[] [J.A. 11].

Furthermore, this proceeding, unlike *Dittrich*, involves the issuance of a specially assessed penalty. Typically, the Secretary of Labor proposes civil penalties pursuant to his regulations at 30 C.F.R. § 100.3. If the Secretary determines that conditions warrant a specially assessed penalty, he may waive the regular assessment process. 30 C.F.R. § 100.5[a]. For special assessments, "[a]ll findings shall be in narrative form." 30 C.F.R. § 100.5(b). The Secretary's narrative findings for the citation and special assessment received by Westfall in this proceeding contain all the information that MSHA is required to provide according to section 104(a), 30 U.S.C. [§] 814(a), of the Mine Act. . . . Thus, the record demonstrates that the Secretary's section 104(a) obligations were fully satisfied.

In *Dittrich*, the only evidence that a citation had been issued was a print-out from MSHA's website. 32 FMSHRC at 1601. The Commission found that "internal MSHA documentation regarding the violations" does not evidence that the citations were issued to the operator. *Dittrich*, 32 FMSHRC at 1600, 1600 n.1. Here, of course, the operator concedes that it was issued the narrative findings for a specially assessed penalty. Westfall Ex. A [] [J.A. 11]. My colleagues wrongly assert that the special assessment is "an internal MSHA document." Slip op. at 3. [J.A. 53.] The record reflects not only that the document was issued to Westfall as required by 30 C.F.R. § 100.5, but also that it was received and signed for by Westfall. Westfall Ex. A [] [J.A. 11, 28-30].

J.A. 55-57. We agree with the dissenting opinion's analysis of *Dittrich* and with the distinctions drawn between that case and this one.

Considering the record before us, the Secretary's petition for review must be granted. The Commission dismissed Westfall's motion to reopen as moot after concluding that there was no final order in this case. There is no substantial evidence or legitimate legal basis to justify this conclusion. We therefore reverse the Commission's decision. The record plainly shows that, after receiving proper notice, Westfall failed to timely contest the Citation No. 6559330 proposed penalty assessment. As a result, the penalty assessment was deemed a final order of the Commission in August 2011. It was not until eight years after the disputed penalty assessment was deemed a final order that Westfall filed a motion with the Commission to reopen the matter. It is unclear whether Westfall's motion has merit; it is quite clear, however, that it is not moot.

The issue before the Commission was whether to grant or deny Westfall's motion to reopen filed nearly a decade after the special assessment was deemed a final order. The Commission has never addressed this issue. The matter is live and will remain so until the Commission considers the motion on its merits and addresses the issues raised by Westfall and the Secretary. We therefore remand the case so that Westfall's motion can be properly adjudicated before the Commission.

### D. The Case Will Be Remanded to the Commission for Review and Proper Disposition

Both parties have suggested that the court should resolve this dispute on the merits. *See* Petitioner's Reply Br. 17; Respondent's Br. 47. We decline the invitation. The

Commission has the authority and responsibility to consider a matter such as this in the first instance, *see* 29 C.F.R. § 2700.1(b); Fed. R. Civ. P. 60(b)(1), (6), subject to judicial review, 30 U.S.C. § 816. There is nothing for the court to review with respect to any disposition of Westfall's motion to reopen because the Commission has yet to address the merits of the matter as required by the Mine Act and the applicable regulations.

In addressing motions to reopen, the Commission has explained "that default is a harsh remedy and that, if the defaulting party can make a showing of good cause for a failure to timely respond, the case may be reopened and appropriate proceedings on the merits permitted." *Sec'y of Lab., MSHA v. Copenhaver Constr., Inc*., 43 FMSHRC 113, 113 (2021). Factors considered include: whether "the operator acted at all times in good faith and without any purpose of evasion or delay," *Sec'y of Lab., MSHA v. Lone Mountain Processing, Inc*., 35 FMSHRC 3342, 3346 (2013); "whether errors were within the operator's control," *id*.; whether the errors "reflect indifference, inattention, inadequate or unreliable office procedures or general carelessness," *Sec'y of Lab., MSHA v. Noranda Alumina*, LLC, 39 FMSHRC 441, 443 (2017) (internal quotation marks omitted); whether "the error resulted from mistakes that the operator typically does not make," *id*.; and whether "procedures to prevent, identify and correct such mistakes have been adopted or changed, as appropriate." *Id*.

While the Commission's "good cause" test is flexible, it is by no means lenient. The Commission has strictly observed the one-year time limit relating to Rule 60(b) motions and narrowly interpreted the "reasonable time" constraint imposed by Rule 60(c). *See, e.g.*, *Wayne J. Sand & Gravel Inc. v. Sec'y of Lab., MSHA*, 43 FMSHRC 386, 387 (2021) (denying a motion filed more than 16 months after the issuance of a default

order); *Sec'y of Lab., MSHA v. Highland Mining Co.*, 31 FMSHRC 1313, 1316-17 (2009) (only motions to reopen filed within thirty days are "presumptively considered as having been filed within a reasonable time"). And it has rejected motions to reopen where petitioners cite flaws with their own internal processes for managing citations. *See Lone Mountain Processing, Inc.*, 35 FMSHRC at 3346 ("We have repeatedly and unequivocally held that a failure to contest a proposed assessment as a result of an inadequate or unreliable internal processing system does not establish grounds for reopening an assessment"); *Sec'y of Lab., MSHA v. Moose Lake Aggregates, LLC*, 34 FMSHRC 1, 2 (2012) ("[I]t is the operator's responsibility to make sure that its employees receiving mail . . . are properly instructed regarding the significance and correct processing of MSHA correspondence.").

In this case, the Commission did not conduct a multi-factor good cause analysis. Nor did it explain the extent to which the commands of Rule 60 are relevant in a case such as this. These are telling omissions given that the Commission has "much discretion" to apply the Federal Rules of Civil Procedure "so far as practicable." *Lone Mountain Processing, Inc.*, 709 F.3d at 1163 (citation and internal quotation marks omitted). And the Commission failed to assess whether Westfall could "carr[y] the burden of establishing its entitlement to extraordinary relief." *Sec'y of Lab., MSHA v. Left Fork Mining Co., Inc.*, 31 FMSHRC 8, 11 (2009).

We "cannot do [the Commission's] work for it." *Children's Hosp. & Research Ctr. of Oakland, Inc. v. NLRB*, 793 F.3d 56, 59 (D.C. Cir. 2015). As the agency statutorily empowered to adjudicate a case of this sort, the Commission "can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later

determine whether its decision exceeds the leeway that the law provides." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 17 (2002). Therefore, remand is the appropriate recourse. *Regents*, 140 S. Ct. at 1916.

### III.    CONCLUSION

For the foregoing reasons, we grant the Secretary's petition for review, reverse the Commission's decision dismissing Westfall's motion to reopen as moot, and remand the case for a prompt disposition of this matter consistent with this opinion.

*So ordered.*