**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 22, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

TINTIC CONSOLIDATED METALS,
LLC,

     Petitioner,

v.

SECRETARY OF LABOR; MINE
SAFETY AND HEALTH
ADMINISTRATION; FEDERAL MINE
SAFETY AND HEALTH REVIEW
COMMISSION,

    Respondents.

No. 24-9560
(MSHA No. WEST 2023-0406)
(Federal Mine Safety & Health
Administration)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

The Mine Health and Safety Administration ("MSHA") cited Tintic Consolidated

Metals LLC ("Tintic") for health and safety violations and proposed a penalty.  Because

Tintic did not contest the proposed penalty within 30 days, it became final.  Tintic asked

the Federal Mine Safety and Health Review Commission (the "Commission") to reopen

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

the matter. It declined. Tintic petitions this court to review that decision. Exercising jurisdiction under 30 U.S.C. § 816(a)(1), we deny the petition.

## I.     BACKGROUND

### A. *Statutory and Regulatory Background*

MSHA, a Department of Labor agency, administers the Federal Mine Safety and Health Act ("Mine Act"), 30 U.S.C. §§ 801-966. The Mine Act authorizes the Secretary of Labor (the "Secretary"), acting through MSHA, "to promulgate mandatory safety and health standards, inspect mines, and enforce the Mine Act by issuing citations, civil penalties, and other orders." *Sec'y of Lab. v. Westfall Aggregate & Materials, Inc.*, 69 F.4th 902, 907 (D.C. Cir. 2023) (citing 30 U.S.C. §§ 811(a), 813(a), 814(a), 815(a), 817(a), 820(a)). The Mine Act also established the Commission, an independent agency, to adjudicate disputes over MSHA's citations, orders, and penalties. *Id.* (citing 30 U.S.C. §§ 816(a)(1), 823). Thus, "MSHA plays the roles of police and prosecutor, and the Commission plays the role of judge." *Lone Mountain Processing, Inc. v. Sec'y of Lab.*, 709 F.3d 1161, 1162 (D.C. Cir. 2013).

MSHA may cite mine operators for violations of the Mine Act and safety regulations. *See* 30 U.S.C. § 814(a). After issuing a citation, MSHA proposes a penalty assessment. *See id.* § 815(a); 30 C.F.R. § 100.3. The operator has 30 days to notify MSHA regarding its intent "to contest the citation or proposed assessment of penalty." 30 U.S.C. § 815(a); *see also* 30 C.F.R. § 100.7(b)(2). "If the mine operator does not respond within thirty days to MSHA's proposed penalty assessment by either paying the fine or notifying the agency of its intention to contest, the proposed penalty is deemed a

final order of the Commission and not subject to review by any court or agency."
*Westfall*, 69 F.4th at 908 (citing 30 U.S.C. § 815(b)(1)(A)).

The Commission may reopen a final order, using Federal Rule of Civil Procedure Rule 60(b) for guidance. *See Jim Walter Res., Inc.*, 15 FMSHRC 782, 787 (1993) (stating that, "[i]n reopening final orders, the Commission has found guidance in, and has applied, 'so far as practicable,' Rule 60(b) [of the Federal Rules of Civil Procedure]" (quoting 29 C.F.R. § 2700.1(b))); *see also Lone Mountain*, 709 F.3d at 1163. Consistent with Rule 60(b), the Commission "may relieve a party from a final order . . . on the basis of mistake, inadvertence, excusable neglect, or other reason justifying relief." *Sw. Rock Prods., Inc.*, 45 FMSHRC 747, 748 (2023) (noting that "default is a harsh remedy and that, if the defaulting party can make a showing of good cause for a failure to timely respond, the case may be reopened"); *see also* Fed. R. Civ. P. 60(b)(1), (6). "Relief under Rule 60(b) requires more than 'general assertions or conclusory statements as to why an operator failed to timely contest.'" *Panther Creek Mining, LLC*, 46 FMSHRC 9, 10 (2024) (quoting *Sw. Rock Prods.*, 45 FMSHRC at 748).

### B. *Factual and Procedural History*

### 1. **MSHA's Citation and Penalty Assessment Against Tintic**

Tintic operates the Trixie mine in Eureka, Utah. MSHA inspected the mine in April 2023 and issued 16 citations for health and safety violations. Tintic did not contest the citations. On June 6, MSHA proposed a penalty assessment of $83,040, which the U.S. Postal Service delivered to Tintic on June 14. Because Tintic did not

3

contest the assessment within 30 days, *see* 30 U.S.C. § 815(a), the penalty became a final order on July 14.

### 2. **Tintic's Request to Reopen**

On August 18, 2023, Tintic received a separate proposed assessment from MSHA, which stated an outstanding balance of $83,040. On August 29, MSHA sent Tintic a delinquency notice. On September 12, 2023, Tintic moved to reopen the final order. It said that, "[a]t the time of receipt" of the final order, it "was undergoing major organizational changes," including the Chief Operating Officer's retiring, the Safety Superintendent's taking a different position, and a new General Manager's starting. App. at 1. Tintic also said that it was "in the process of reviewing all [its] safety systems and controls, including reviewing the MSHA citations and reasons for them in an effort to continue to improve [its] safety performance and compliance," that the "amount owed is significant," and that "[t]here are several citations [it] would like to contest." *Id.*

### 3. **The Secretary's Response**

The Secretary did not oppose Tintic's motion but "encourage[d]" Tintic "to be more vigilant with the receipt and processing of proposed assessments." *Id.* at 7-8.

### 4. **The Commission's Order**

#### a. *The majority*

On August 28, 2024, the Commission, in a 3-2 decision, denied the motion, holding that Tintic failed to establish good cause for reopening the proceedings. The majority said Tintic provided "no explanation for its failure to timely contest the proposed penalty assessment beyond a general description of personnel changes and

4

fail[ed] to describe actions it will take to ensure timely filing in the future." *Id.* at 26. It further said that although Tintic "was undergoing personnel changes, it fail[ed] to provide information regarding how those personnel changes caused its failure to timely file." *Id.* at 25.

b. *The dissent*

Two members dissented, stating Tintic "demonstrated good cause" because it (1) filed its motion "soon after receiving a delinquency notice sent by MSHA," (2) "does not have a history of filing motions to reopen with the Commission," and (3) included relevant details on its failure to timely contest, "including who, when and how it discovered its mistake." *Id.* at 27. "We conclude that a major organizational change and a missed filing deadline, coupled with the prompt filing of a motion to reopen, indicates that the operator's failure to timely file was the result of a mistake or excusable neglect." *Id.* The dissent also considered that the Secretary did not oppose the request.

\* \* \* \*

Tintic filed a timely petition for review.

## II.  DISCUSSION

### A.  *Jurisdiction*

"A party aggrieved by an order of the Commission may seek review in either the Court of Appeals for the District of Columbia or the 'court of appeals for the circuit in which the [safety] violation is alleged to have occurred.'" *Noranda Alumina, LLC v. Perez*, 841 F.3d 661, 664 (5th Cir. 2016) (alteration in original) (quoting 30 U.S.C. § 816(a)(1)). Because Tintic's alleged violations occurred in Utah and Tintic sought

5

Tenth Circuit review, we have jurisdiction to consider the petition.  30 U.S.C. § 816(a)(1).

## B.  *Standard of Review*

"The standards controlling judicial review of Commission orders are . . . governed by the Mine Act and general administrative law principles."  *Westfall*, 69 F.4th at 910. The Administrative Procedure Act's judicial review provisions do not apply.  30 U.S.C. § 956; *Lone Mountain*, 709 F.3d at 1163.  "In both judicial and administrative contexts, courts review denials of motions to reopen for abuse of discretion."  *Noranda*, 841 F.3d at 664; *see also Westfall*, 69 F.4th at 911; *Lone Mountain*, 709 F.3d at 1163.

## C.  *Operator's Burden and Factors for Consideration*

"When filing a motion to reopen before the Commission[,] the operator bears the burden of showing exceptional circumstances."  *Panther Creek*, 46 FMSHRC at 10. "Although the Commission may consider motions to reopen filed within 30 days of the operator's receipt of its first notice of delinquency to be filed within a reasonable amount of time; the motion must also 'set forth an adequate explanation for its reasons for its delinquency.'"  *Id.* (quoting *Highland Mining Co.*, 31 FMSHRC 1313, 1316-17 (2009)). "At a minimum, the applicant for such relief must provide all known details, including relevant dates and persons involved, and a clear explanation that accounts, to the best of the operator's knowledge, for the failure to submit a timely response . . . ."  *Higgins Stone Co.*, 32 FMSHRC 33, 34 (2010).

"In reviewing an operator's explanation, [the Commission] consider[s] the entire range of factors relevant to determining whether the operator's error was the result of

mistake, inadvertence, surprise, excusable neglect, or another good faith reason. No precise formula exists for weighing the factors, and the analysis is conducted on a case-by-case basis." *Noranda Alumina, LLC*, 39 FMSHRC 441, 443 (2017). The Commission may consider whether (1) the error reflects "indifference, inattention, inadequate or unreliable office procedures"; (2) "the error resulted from mistakes that the operator typically does not make"; (3) "procedures to prevent, identify and correct such mistakes have been adopted or changed"; (4) "all relevant documentation" was provided; (5) the operator acted in good faith; and (6) MSHA opposed reopening. *Id.* (quotations omitted).

### D. *Commission Decisions on Motions to Reopen*

### 1. **Cases Denying Motions to Reopen**

When the operator cites personnel changes to justify a missed deadline to contest a proposed penalty, the Commission routinely has denied motions to reopen when the operator failed to identify "the change in personnel and how it resulted in the operator's failure to timely contest the proposed penalty assessment." *TM Crushing, LLC*, 47 FMSHRC 302, 303 (2025).

In *TM Crushing*, the operator "fail[ed] to provide a factual and detailed accounting of the change in personnel" when it merely stated that it "recently had a change in personnel who normally handled the processing of assessment forms" and during "the transition period, the assessment form did not get forwarded to outside counsel in a timely manner." *Id.*

7

In *Ramaco Resources, LLC*, 46 FMSHRC 403 (2024), the operator specified that its Vice President of Safety did not timely receive the proposed assessment "likely due to staff turnover" but "failed to provide any details regarding the change in personnel or how it contributed to the processing delay." *Id.* at 404.

In *Sun West Acquisition Corp.*, 45 FMSHRC 141 (2023), the operator "fail[ed] to allege specific facts to explain why it neglected to timely contest the proposed assessment" when it stated it was unable to timely contest "due to loss of some of [its] . . . staff" without "specify[ing] what it mean[t] by 'loss of staff' or how this apparent 'loss' was connected to the operator's failure to receive the proposed assessment or respond in a timely manner." *Id.* at 142.

2. **Cases Granting Motions to Reopen**

The Commission has granted motions to reopen when the operator has explained with specificity how staff changes have affected the roles personnel play relating to the penalty assessment process and the receipt of the proposed penalty assessment.

In *Cranesville Aggregates*, 45 FMSHRC 811 (2023), the operator asserted that "its Safety Department was undergoing a major personnel transition when the proposed assessment was received [on October 11]:  the safety director had semi-retired and was working from home, a new safety director had not yet been hired, and the safety manager was on leave until mid-November." *Id.* at 811-12.  "As a result, the assessment did not come to the attention of the safety department until the week of November 20 [10 days after the penalty became final], at which time it was promptly contested." *Id.* at 812. The Commission granted the motion to reopen, stating the operator's "failure to timely

contest the assessment was the result of a coincidental series of personnel issues, and therefore unlikely to recur." *Id.*

In *Blue Creek Mining, LLC*, 45 FMSHRC 609 (2023), the operator said that "its Corporate Safety Director, who usually files notices of contest, left the company" near the deadline to file the notice of contest and did not file the required notice before leaving, "nor did he notify any other employee of the impending deadline." *Id.* at 610. "When a paralegal for Blue Creek learned of the oversight, the operator quickly retained counsel to file the required contest." *Id.* The Commission granted the motion, finding "that due to mistake, inadvertence or excusable neglect the penalty assessment was not timely contested." *Id.* at 611.

In *River View Coal, LLC*, 45 FMSHRC 488 (2023), the operator said it failed to timely file "due to personnel changes involving a retirement and subsequent positions and duties being handled by different staff." *Id.* at 488. The mine's safety director "assumed the duties of contesting proposed assessments shortly after his predecessor retired," but "there was a brief period when the assistant safety director" was covering that role. During this period, "the assistant safety director miscalculated the deadline for filing the notice of contest." *Id.* at 488-89. Despite the error, the operator mailed its contest form only one day late. *Id.* at 489. The Commission granted the motion, finding "the operator committed an inadvertent mistake due to its personnel changes and subsequent positions and duties being handled by different staff." *Id.*

E. *Analysis*

Tintic argues that because the Commission did not conduct a multi-factor analysis and applied an inconsistent standard, it abused its discretion in denying the motion to reopen. Pet. Br. at 10-15; Pet. Reply Br. at 2-6, 8-9. We disagree.

The Commission denied the motion because Tintic provided only "a general description of personnel changes" and failed "to describe actions it will take to ensure timely filing in the future." App. at 26. It said operators must "provide all known details, including relevant dates and persons involved, and a clear explanation that accounts . . . for the failure to submit a timely response." *Id.* at 25 (quoting *Higgins Stone*, 32 FMSHRC at 34). The Commission has consistently denied motions that fail to adhere to this rule. *See Coyote Gravel Prods., Inc.*, 46 FMSHRC 875, 876 (2024) (denying motion to reopen when operator did not specify the "error" causing its failure to timely file and did not specify steps it would take to ensure timely filing in the future); *Atlanta Sand & Supply Co.*, 30 FMSHRC 605, 606 (2008) (denying motion because operator failed "to provide sufficient information to determine whether or not good cause may exist to reopen the final order").

Unlike *Cranesville*, *Blue Creek*, and *River View Coal*, Tintic provided only a "cursory explanation" without necessary detail. App. at 25. Tintic said the "organizational changes" at "the time of receipt" of the final order concerned the Chief Operating Officer, Safety Superintendent, and General Manager. *Id.* at 1. But it did not (1) provide details about when these changes occurred relative to delivery of the proposed assessment; (2) identify which of these roles normally contested proposed

assessments; or (3) explain how these personnel changes caused Tintic's failure to timely contest the proposed assessment. *See Cranesville*, 45 FMSHRC at 811-12; *Blue Creek*, 45 FMSHRC at 610; *River View Coal*, 45 FMSHRC at 488.

Also, Tintic's failure to explain what happened to the proposed assessment that MSHA delivered in June stands in contrast to *Blue Creek*, 45 FMSHRC at 610 (previous safety director received proposed assessment but did not contest it or inform anyone of the assessment before leaving role); *River View Coal*, 45 FMSHRC at 489 (assistant safety director temporarily handling assessment contests received the proposed assessment but miscalculated date); and *Noranda*, 39 FMSHRC at 445 ("After the unanticipated departure of its safety director[,] Noranda paid the assessment inadvertently rather than ignoring it.").

Tintic's motion "completely lack[ed] a description of its normal personnel and processes used to receive and contest proposed assessments," *Select Materials*, 45 FMSHRC 1011, 1013 (2023), and it did not adequately describe what future steps it would take to ensure timely filing, *see Coyote Gravel*, 46 FMSHRC at 876 (denying motion based on insufficient explanation despite the operator's (1) identifying who normally processes contest forms, (2) stating an "internal error" and neglect caused the failure to file, and (3) asserting it "has since corrected its procedures to ensure future assessments are timely contested").[1]

---

[1] Tintic argues the Commission erred by penalizing it for not specifying the steps it would take to ensure timely future filing because Tintic's review of its processes was ongoing. Pet. Br. at 13. But Tintic must show good cause to reopen, *see Panther Creek*, 46 FMSHRC at 10, and it cites no authority holding that an ongoing review process

In short, Tintic did not provide an "explanation for its failure to timely contest the proposed penalty assessment beyond a general description of personnel changes" nor "describe actions it will take to ensure timely filing in the future." App. at 26.

We agree with the Commission's dissent that some factors weighed in favor of granting Tintic's motion to reopen. *See id.* at 27 (noting that Tintic did not have a history of filing motions to reopen and that the Secretary did not originally oppose the motion to reopen). But, as discussed above, we cannot say the Commission majority abused its discretion in holding that Tintic "failed to meet its burden of showing that it is entitled to relief" when Tintic provided "only a cursory explanation for its failure to timely respond to the proposed penalty assessment." *Id.* at 25; *see, e.g.*, *Panther Creek*, 46 FMSHRC at 10 ("Relief under Rule 60(b) requires more than 'general assertions or conclusory statements as to why an operator failed to timely contest.'" (quoting *Sw. Rock Prods.*, 45 FMSHRC at 748)).

## III. CONCLUSION

We deny the petition.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

excuses an operator from explaining what steps it will take in the future to ensure timely filing. *See Morton Salt, Inc.*, 46 FMSHRC 15, 16 (2024) (denying motion to reopen in part because "[a]lthough [the operator] has stated that it will take action to prevent such a reoccurrence in the future, it has not identified the steps it will take").